NATHANIEL H. ELLICOTT, JONATHAN ELLICOTT, AND BENJAMIN ELLICOTT, CO-PARTNERS UNDER THE FIRM OF JONATHAN ELLICOTT AND SONS, *vs.* HENRY NICHOLS.— *December* 1848.

*J, N & B,* partners in trade, made their promissory note, payable to *H,* or order: after it was due for more than three years, and after the dissolution of the house, it is not competent for one of the partners to revive the remedy on the note against the three, so as to avoid the plea of limitations.

A plaintiff, who seeks to extricate a case from the act of limitations, must shew a new promise, within three years prior to the institution of the suit, either express or implied.

It is not the mere acknowledgment of a subsisting indebtment which removes the bar. Where a debt is admitted to be due, the law raises a promise to pay it, and it is this new promise, either made in express terms, or deduced from an acknowledgment as a legal implication, which is to be regarded as re-animating the old promise, or as imparting vitality to the remedy, extinct by lapse of time.

From the moment a partnership terminates, the partners becomes distinct persons with respect to each other, and, consequently, one partner can have no power to subject, by his acts or declarations, his former associates to new obligations.

The power of adjusting the unsettled affairs of a partnership, and, as a portion of this authority, the right to collect and pay the outstanding and subsisting debts of the firm, survives the dissolution, as a necessary power; yet, with this qualification, those who formerly were partners, stand to each other, after the dissolution, as if the association had never been formed.

By withdrawing from a joint debtor the protection afforded him by the act of limitations, he is subjected to a new liability. It practically and necessarily imposes upon him a new liability.

The case of Whitcomb vs. Whiting, 2 Doug., 652, adopted. Part payment of principal, and payment of interest, before the statute has attached, made by one joint debtor, is a payment by all, and takes the case out of the bar.

A defendant is not benefitted by the part payment of a debt, barred by the act of limitations, when the partial payment is made.

One co-promissor, who pays a debt barred by the act, against the consent of his co-debtor, cannot maintain an action for contribution against such co-debtor.

From an acknowledgment tainted by fraud, the law would infer no new promise.

The case of Ward vs. Howell, 5 H. & J., 60, does not decide any thing upon the subject of limitations. The remark of the court on that subject, is a dictum.

APPEAL from *Baltimore* county court.

This was an action of *assumpsit*, brought on the 16th January 1844, by the appellee against the appellants. The defendants pleaded *non assumpsit* and limitations, on which issues were joined.

At the trial of this cause, the plaintiff offered in evidence the following promissory note :

"ELLICOTTS MILLS, 5 *Mo.* 29*th*, 1838.

Twelve months after date, we promise to pay to *Henry Nichols*, thirteen hundred dollars, at six per cent. interest, for value received.

$1300.        JONATHAN ELLICOTT & SONS."

At the foot of which was written :

"*Baltimore, May* 18, 1842,—Received from *R. Mickle,* five dollars on account of the above note.

HENRY NICHOLS."

It was admitted that defendants traded under the firm of *Jonathan Ellicott and Sons,* at the date of the note.

The plaintiff also offered in evidence a letter of the plaintiff to *Nathaniel Ellicott,* and his reply thereto, viz :

"B."

"ELLICOTTS MILLS, 2 *Mo. 4th,* 1843.

HENRY NICHOLS,

*Esteemed Friend:*—Your favor of the 31st is received, and, believe me, when I tell you, that there is nothing moves me more, than an appeal to my sense of justice, my humanity, or my sympathy, without ability to afford relief. Was it in my power, in any way, to relieve you, it would give me as much gratification to do so, as you to receive it. Until the failure of *Jonathan Ellicott and Sons,* I believe they always paid to the uttermost farthing, and the poor or the needy was never turned empty away; and when they assigned their whole property for the payment of their debts, it was thought, that it would much more than do it, but such has been the disasters of the times, I have been as much disappointed as you, or any other person can be. I regret, that you did not purchase property for the amount of your claim; this you had the right and privilege of doing, and, in this way, the whole value of your claim would have been secured to you, dollar for dollar. *Benjamin H. Ellicott* and *Robert Mickle,* are the two trustees of the estate of *Jonathan Ellicott and Sons,* and they are the only parties that have had any thing to do with its settlement; all right and title, and control, at the assignment, having passed from me. Not having earned any money, but lost much, since the failure, I have been reduced to live by the kindness of my wife's con-nections, and, without them, should have been as destitute as you are, and, were it in my power to do so, I have the heart and the feelings to share their bounty with you. I do not see how I could accomplish any thing in the way of relief among

the creditors; had I myself the ability, nothing would afford me more sincere gratification.

I am your friend sincerely,     N. H. ELLICOTT."
"HENRY NICHOLS, *Darns Town, Md.*"

"C."

"SENECA MILLS, *Jan'y* 31*st*, 1843.

*Dr. Sir:*—I am compelled again to ask the favor of you, to try and help me; you have the advantage of me by law, but I trust not by conscience; you have had my labor for several years, and that of the hardest kind; night and day have I labored to save something for myself, and entrusted it to you, and now to be put off without one cent, is a matter to be better imagined, than of real feeling. Sir, will you put me off in this way, without trying to relieve me at all? you have friends and influence, will you treat me with cold indifference, and not try to help me? If you will only ask your creditors, I have no doubt but they would, with your influence, let me have something, as they have had the advantage of the law. I think, the justice of my case will not let them rob me with a clear conscience. If you will only do for me what you can, I will be perfectly satisfied; I am sure you could, if you would, do something. I am not worth one dollar now myself, in reality, but I think, if I owed you the amount of my note, I would pay it, if it was only one dollar at a time; if you was in my situation, it would give me pleasure to do it for you, even should I want myself, though I will not ask you to suffer for me, I only ask your influence with your friends, to help me, as I must suffer, by placing more confidence in men than they deserve.

Yours very respectfully,     HENRY NICHOLS."
"Mr. NATH'L H. ELLICOTT, *Ellicotts Mills.*"

The plaintiff further proved by *Mrs. Nichols,* that four years ago last fall, (1842,) she called upon *Mr. Nathaniel Ellicott,* one of the defendants, at the request of the plaintiff, about the money due to him, and to see if she could get thirty dollars from him; that she spoke to *Mr. Ellicott* all about the money, and how it was claimed by her brother, the plaintiff; he did not deny that he owed the money; said he was agent for *Mr.*

*Carroll* in the big mill; that he was dependent on his salary; that he was sorry for *Mr. Nichols*, and spoke very feelingly, but said he could do nothing for him, he was only one of the firm; he did not deny that the debt was due; did not admit it; said that plaintiff ought to have his money; said that he was poor; did not deny that the debt was due, and did not admit that it was. He did not admit or deny, that he or the firm was, at the time of the conversation, indebted to the plaintiff; he said nothing about that; said he was poor, and but one of the firm, and expressed a great deal of pity for the plaintiff. He said, he, *(Nichols,)* ought to have his money. He never denied he owed the money, and said that he ought to be paid. He never denied any assertion she made. Witness said the money was the hard earnings of his life, and asked *Ellicott* if he could do any thing for him? He said he was but one of the firm, that he was sorry for him; he never denied what she said, or said that the debt had been satisfied or paid.

The plaintiff then offered in evidence the following entry, in the schedule of *Jonathan Ellicott and Sons*, made to their creditors in May 1839.

"*Jonathan Ellicott and Sons*' note to *Henry Nichols*, for $1300."

The defendants then offered in evidence a release, dated 27th May 1839, from their creditors, (including the plaintiff,) reciting their inability to pay promptly all their debts, their desire of obtaining a discharge and release from all their creditors, upon assigning their property in trust for their benefit, their making such proposals to their creditors, the acceptance thereof by them; and that the said creditors, in consideration thereof, respectively release, &c., the said *J. E. and Sons*, from all contingent liabilities contracted severally with them, as well as from all claims, debts, due and to become due, from the said *J. E. & S.* to them; that if *J. E. & S.* fail to execute such deed of trust within sixty days, or if the said *J. E. and Sons* fail, within said sixty days, to obtain a release from all their creditors, then, in either event, the release to be void. This instrument was sealed by a great number of creditors.

The defendants also gave in evidence a deed of trust, of 19th July 1839, from them to *Robert Mickle*, as trustee, and that their co-partnership was dissolved on the 26th July 1839, by mutual consent, and public notice given thereof by advertisement, but offered no evidence, that the newspapers in which the notice was published, were taken or seen by the plaintiff.

The plaintiff then further offered in evidence by *William Ross*, that *Hopkins and Brothers* had a draft on *Ellicott and Sons*, and by them accepted, and the following entry, in the books of *Hopkins and Brothers*, and proved that it was in the handwriting of a deceased clerk of said last mentioned firm.

"*Geo. R. Peak's* draft on *J. Ellicott and Sons*, due May 13th, 16th, 1839, for $400, compromised and settled with *J. Ellicott and Sons*, on the 29th June 1840, for $300, or seventy-five cents in the dollar, exclusive of interest." The plaintiff further proved by *Beale Howard*, one of the creditors of *Jonathan Ellicott and Sons*, that he executed the release to them, but not before he obtained the amount of his claim, without interest; could not say at what time the money was paid to him, but that he thought it was about a month before he purchased some lots from *Mr. Mickle*, the trustee; that the deed from the trustee was given on the 18th January 1840, but that an agreement for the purchase was made previous to that time. *Howard* further stated, that he did not receive the money for his claim from either of the members of the firm of *Jonathan Ellicott and Sons*, but that both *Nathaniel* and *Benjamin Ellicott* told him, to take his notes to a gentleman in *Baltimore*, who would give him the money for them. Witness did not recollect the name of the gentleman, but he got his money from him; *Benjamin Ellicott* taking him to the store, and pointing to it as the place he was to be paid.

The defendants then further proved by *Mr. Mickle*, that he had seen the plaintiff in this cause, who called upon him to enquire what was the condition of the trust property, how much he was likely to get for his claim, and when it would be settled; that on the 18th May 1842, plaintiff called upon him, and with the note upon which this action is brought, when witness paid him five dollars upon it, and took his receipt at the bottom of the note.

The defendants further proved by the same witness, that he advertised the mills, being a part of the trust property, for sale, in the fall of 1839, and again in 1840, and proceeded openly in a full execution of the duties of the trust; that he sold property, and distributed the proceeds of sale under the trust deed, and conveyed the unimproved property for the claims of the firm of *Jonathan Ellicott and Sons*, and that during all this time, the plaintiff never informed him, that he objected to the release or the deed of trust, or that he meant to impeach either the one or the other.

The defendants further gave in evidence the two letters from *C. Smith* to *R. Mickle*, viz :

"I."

Geo. Town, *May 23rd*, 1842.

*Dear Sir:*—At the request of *Mr. Henry Nichols*, I address you with reference to a note in his favor, drawn by *Jonathan Ellicott and Sons*, due some two years since, and which he placed in your hands, when he was in *Baltimore*, as security for money advanced by you to him. His object is to realise something at once from the note, however small, and he has authorised me to sell it, if a purchaser could be found, at twenty cents on the dollar, rather than wait longer. You will confer a great favor, if you would advise me what the prospect is of finding a purchaser, and if not in your power to dispose of it, what probability there is of an early settlement of the concerns of the estate.

*Mr. N.* is much in want of money, and would be glad to hear through me, as soon as it may suit your convenience.

I am very respectfully, your ob't serv't,

C. Smith."

"J."

"Geo. Town, *July 14th*, 1842.

R. Mickle, Esq'r,

*Dr. Sir:*—Your favor of the 13th, enclosing note of *J. Ellicott and Sons*, in favor of *H. Nichols*, for $1300, was received by me this morning. I have not actually concluded a sale of the note, but have partially arranged for the purchase

of mill stones from *Mr. Duvall,* who thinks he can avail of the note at thirty cents.

I remain your very ob't serv't,

C. SMITH."

Also a letter from plaintiff to *R. Mickle.*

"H."

"SENECA MILLS, *January* 29*th,* 1843.

*Dear Sir* :—I take this opportunity to know of you, whether there is any chance of getting any thing for my note of the *Mr. Ellicotts.* I am hard pressed, and not able to labor as I have done, to make the money that I placed in the hands of *N. G. Ellicott* for safe keeping—which he promised to return to me at any time that I should want it, and in less than twelve months I was told that it was placed in the firm of *Ellicotts,* and I could not get it; that they had given up all their property, and appointed you their trustee, but would insure one-half to be safe:—now I understand that there are preferred claims that will take all—this is hard, if fair, as those preferred claims surely get my labor, as well as the other property, and this money I labored hard night and day for, and made it all by strict honesty, which I have no doubt you have already understood from *Margaret H. Weling,* and *Mr. Ellicotts* also—and I now ask the favor of you to lay my case before the creditors, and they, I hope, will allow me some assistance, as it is but a small sum, and their's so large that they would never miss it; and it would at this time relieve me very much; and I hope you will help me also, if it should be but little it will do me some good—or advise me what to do.

I remain yours, very respectfully.

HENRY NICHOLS."

The defendants further proved by said witness, that the claims against the firm of *Jonathan Ellicott & Sons,* sold as high as eighty per cent. at first; that was the highest price. Some for seventy-five, sixty, and he knew of the sales of $30,000 of claims selling at sixty-six cents in the dollar. In answer to a question on the part of the plaintiff's counsel, the same witness answered, that he knew about the concerns of the *Ellicotts;* had heard some of the creditors made objec-

tions to sign the release; but he never was informed by *Benjamin H. Ellicott*, that he could recollect, that he had to give creditors money to sign, or that he employed *Vickers*, or any one else, to give it for him; some of the creditors who wanted the arrangement carried out, he believed, did give something to procure the signature of an unwilling creditor; he thinks this was done by *Ellicott & Brothers*, as they were anxious to have the arrangement carried out.

The plaintiffs then proved by *Mr. Wilson*, that he acted for *Mrs. Treakle*, one of the creditors of *J. Ellicott & Sons*, and that he refused, for him, to execute the release, without getting the principal of her claim; that she obtained this, he thinks, some six months after the date of the release, when her name was affixed; that he does not recollect who paid the money, but thinks he received it in a check from *Mr. Vickers*.

The defendants then, further to prove the issue on their side, proved by *Mr. Mickle* that he was not the agent of *Jonathan Ellicott & Sons*, or acted for them in any other character than as trustee, under the deed of trust; that *Nichols* called on witness and enquired what was the condition of the trust fund, and when the note, which he then presented to me, (which is the same sued on in this action,) would be paid? I told him there were liens on the lands, being preferred claims, which were to be paid off first. Told him that sales of trust property had been made, and gave him a general statement of the condition of the trust property, and that I was not prepared to make a dividend upon his note. The creditors of *J. E. & Sons*, generally, called upon him in regard to trust property, and about their debts; that plaintiff called, as they had, on me, telling him that I could make no dividend on his note; plaintiff then said he had no money to go home, and asked me to let him have five dollars to take him home, and that I might hold the note as security. The above statement is made by me, as an impression upon my recollection of the substance of what took place between *Nichols* and myself, on the day the note was presented. I have not a distinct recollection of the words used, either by myself or *Nichols*. When I first heard of this suit my recollection recurred to the conversation, and the call

upon me by *Nichols,* above stated. I have never before heard
of it, and was surprised, knowing that his paper was on the re-
lease, and recollecting that he had said nothing to me about
recurring to the personal liability of *Jonathan Ellicott & Sons.*

Whereupon the plaintiff prayed the court to instruct the
jury:

If the jury believe that the defendants in this cause were
partners in trade, on the day upon which the note sued upon
was made, and that said note was signed by them, and that
said *Nichols* wrote to one of the defendants the following let-
ter, (*see* letter marked C, ante, 88,) to which said defendants
wrote the following answer, (*see* letter B, ante, 87;) and if the
jury further find, that in the fall of 1842, *Ann Nichols*, by di-
rection of plaintiff, called upon said *J. Ellicott,* the defendant,
and stated to him that the note now sued upon was for money
lent to defendants, and was the hard earnings of his life of
labor, and that *Nathaniel Ellicott,* in reply to such observa-
tions, said, that *Nichols'* was a hard case, he was sorry for him,
he was but one of three partners, he could do nothing for him,
he was poor and living on a salary; and, also, that he, *Nichols,*
ought to be paid; and, also, from the letter written by *Nichols*
to *Mickle,* given in evidence by the defendant, then there is
evidence from which the jury can find, that said claim is not
barred by limitations, although the firm of *J. Ellicott & Sons*
was dissolved in July 1839.

2nd. If the jury believe the facts stated in the foregoing
prayer, and if they further find that several of the creditors of
*J. Ellicott & Sons,* did not sign their release within the time
prescribed therein, but afterwards were paid their whole, or
nearly their whole debts, to induce them to sign the same, that
such release is no bar to this suit.

3rd. If the jury believe the facts stated in the plaintiff's first
prayer, then the evidence takes the case out of the statute of
limitations.

The defendants then prayed the court to instruct the jury:

1st. That if the jury believe from the testimony, that the
plaintiff executed the release, as given in evidence; that he
called upon the trustee as one of the creditors of *Jonathan*

*Ellicott & Sons,* and presented his claim to him to be paid out of the trust funds; or if the jury believe that the trust property was advertised and sold, and the proceeds of sale distributed under the trust deed, also given in evidence by defendants, and the property therein mentioned, or portions of it, sold and deeded to creditors and others, in pursuance of the provisions thereof, and if the jury further believe, that, all this while, the plaintiff stood by and permitted the full execution of said trust by *Mr. Mickle,* and acquiesced therein, and never gave notice to him, or to the defendants, until the institution of the suit in this case, that he meant to assail said release on the ground, that it was not executed in time, or that money was paid to some of the creditors for their signatures, then the said plaintiff is estopped from taking these objections now.

2nd. If the jury find from the evidence, that some of the creditors who signed the release, did so after the period prescribed for the execution thereof, this does not, of itself, invalidate the release, and render it void as to all or any of the signing creditors: provided they shall further find, that the said deed of trust was executed within the time, and in the manner prescribed in said release.

3rd. That there is no evidence from which the jury can infer, that any one of the members of the firm of *J. E. & Sons,* by secret bargain, paid any money to the creditors signing the release, for their signature thereto.

4th. If the jury find that *J. E. & Sons,* or any creditor, anxious to have the arrangement proffered to their creditors, carried out, did pay, or agree to pay, or to secure to one or two of the signing creditors, the principal of their debt, or seventy-five per cent. on the amount thereof, such payment or agreement to pay or secure, does render the release null and void, at the option of any of the signing creditors: provided they find that the deed was executed, as provided for by said release.

5th. That said release cannot be impeached for any fraud proved in this case, at law, and in this court.

6th. That the provision in said release, that it should be executed within the time prescribed therein, and that unless executed by all the creditors within the time limited it should be

void, is a provision for the benefit of the defendants, which it was competent for them to waive; that they did waive it by executing the deed of trust, as stated in the evidence, if the jury believe it, and that in so waiving said provision, and executing said deed, the signing creditors obtained the same full and entire benefit thereof, as if every creditor had signed the release without any thing paid them, and within the limits of the time prescribed therein, and that, therefore, the plaintiff, as one of the signing creditors, cannot avoid said release on the ground, that it was not executed in time, or that money was paid to some of the creditors for signing it.

7th. That it is the province of the court authoritatively to interpret the letter of plaintiff to *Nathaniel Ellicott*, and his reply; and that these papers do not take the plaintiff's claim out of the bar of the statute of limitations.

8th. That no sufficient acknowledgment of a subsisting debt, at the time the acknowledgment was made, to prevent the bar of the statute of limitations to plaintiff's demand, has been proved in this case, although the jury may believe the testimony of *Mrs. Nichols*.

9th. If the jury believe that the partnership of *Jonathan Ellicott & Sons*, was dissolved in the manner stated in the proof; and that subsequent thereto, the conversation proved by *Mrs. Nichols*, took place with *Nathaniel Ellicott*, nothing that he said, can revive the plaintiff's demand, as against the other defendants in this cause.

The court, (LE GRAND, A. J.,) granted the prayers of the plaintiff, and refused those of the defendants, who thereupon excepted, and appealed to this court.

The cause was argued before DORSEY, C. J., SPENCE, MARTIN and FRICK, J.

By DULANY and McMAHON for appellants,
By W. H. G. DORSEY and R. JOHNSON, for appellees.

MARTIN, J, delivered the opinion of this court

In this case an action of *assumpsit* was instituted in *Baltimore* county court, by the appellee against the appellants, as

partners, trading under the name of *Jonathan Ellicott and Sons,* for the recovery of a promissory note, given by the firm to the appellee, on the 29th of May 1838.

The appellant pleaded *non assumpsit,* and the statute of limitations, and it appears from the record, that the plaintiff at the trial below, to relieve the case from the operation of the bar, created by the act of limitations, relied, mainly, upon the letter of *Nathaniel Ellicott,* of the 4th February 1843, and upon the admissions and assumptions, supposed to have been made by the said *Ellicott* with respect to this debt, in a conversation held with *Mrs. Anne Nicholls,* in the autumn of 1842.

It appears from the testimony exhibited in the bill of exceptions, that the firm of *Jonathan Ellicott and Sons,* was dissolved on the 9th of July 1839, and that *Benjamin H. Ellicott,* one of the partners, was empowered to collect the assets, and settle up the business of the partnership; and the dissolution of the firm, and the selection of *Benjamin H. Ellicott,* as an agent, to wind up the concerns of the house, was, on the same day, communicated to the public through the medium of the *Baltimore* newspapers.

The promissory note in controversy, was drawn by the appellants on the 29th of May 1838, payable twelve months after date; and it therefore appears, that the admissions relied on by the appellee, to take this case out of the statute of limitations, were made not only after a dissolution of the partnership, but after the statute had attached to the claim. And in this posture of the case, the counsel for the appellants have contended, that *Nathaniel Ellicott* had, at that period, no power to bind his former co-partners, by his acknowledgments and promises, so as to deprive them of the defence of the statute of limitations. Upon the point thus presented for the consideration of the court, there has been, as on almost every question connected with the statute of limitations, a most embarrassing conflict of judicial opinions; but after a careful examination of the prominent cases bearing upon this subject, we have reached the conclusion, that the proposition advanced by the counsel for appellants is correct, and that on this ground the judgment of the court

13    v.7

below must be reversed.   We proceed to state the reasons by which we have been conducted to this conclusion.

In the case of *Duval against Peach*, decided in 1843, 1 *Gill*, 172, the defendant relied on the statute of limitations, and asked the court to instruct the jury :

" That if the jury should find from the evidence, that the agreement was made, and the purchase money paid on the 30th of December 1826, and that the original writ in this cause did not issue until the 1st of March 1840, that then this action was barred by limitations, *unless they should find some subsequent assumption or promise by the defendant, either to repay the money, or perform the contract.*"

The county court granted this prayer.   The action of the court below was ratified by this court, and they announce the principle :

" That in *Maryland*, to remove the bar raised by the statute of limitations, there must be such an acknowledgment of a subsisting debt, as is equivalent to an express or implied assumpsit or promise to pay."

In the case of *Frey against Kirk*, decided in 1832, 4 *G. & John.*, 509, the statute of limitations was pleaded.   It was proved at the trial, that the defendant admitted the debt was due, but said "the plaintiff might save himself the trouble of suing him, as he had taken the benefit of the insolvent laws." The discharge under the insolvent laws, to which he referred, imparted to him, in fact, no protection.   But the statement was held insufficient to remove the bar; and the court said:

"Every acknowledgment to take a case out of the statute, should be of such a character, as that an implied promise may arise therefrom."

We consider it, therefore, perfectly clear, in accordance with the principles enunciated in the cases to which we have just adverted, that a plaintiff who seeks to extricate a case from the operation of the statute, must show a new promise within three years prior to the institution of the suit, either express or implied.   It is not the mere acknowledgment of a subsisting indebtment which removes the bar.   Where a debt is admitted to be due, the law raises a promise to pay it.   And it is this

new promise, either made in express terms, or deduced from an acknowledgment, as a legal implication, which is to be regarded as re-animating the old promise, or, as imparting vitality to the remedy, which, by lapse of time, had become extinct, and thus enabling the creditor to recover upon his original contract.

In the case of *Little against Blunt*, 9 *Pick.*, 492, the court said :

" If the debt remained, the remedy was gone, and there was no subsisting cause of action. The new promise, therefore, is a new cause of action; for without it there was no cause of action. * * * * * * But it is not necessary to declare upon the new promise. According to the established rules of pleading, the plaintiff had the right to declare on the original promise, and when the statute of limitations was pleaded, he might reply the new promise. When the pleadings assume this shape, the original promise is, apparently, the cause of action, but it is the new promise alone that gives it vitality; and that, substantially, is the cause of action."

In the case of *Keplinger against Griffith*, decided in 1830, 2 *Gill and Johnson*, 296, and recently recognised by this court, as authoritative, in the case of *Cross vs. Carter*, the Court of Appeals say :

" It was ruled by this court in *Oliver vs. Grey*, 1 *Harr. and Gill*, 204, that the acknowledgment of the debt, with a naked refusal to pay, or a refusal accompanied with an excuse, for not paying it, which, in itself, implies an admission that the debt remains due, and furnishes no real objection to the payment of it, is sufficient to take a case out of the statute of limitations;" and it has been supposed that the rule thus stated, is incompatible with the proposition announced by this court in *Frey against Kirk*, and *Duval against Peach*, that to take a case out of the statute, there must be a new promise, either express or implied. We do not think so."

The principle embodied in the *fourth* resolution, in *Oliver vs. Grey*, was probably transferred to that case, from the case of *Swan against Sowell*, 2 *Bar. and Ald.*, 761, where *Bayley, Justice*, said :

" The question, in these cases, always is, whether the admission, where no express promise to pay is made, be sufficient for the law to raise from it an implied promise. If a party admits a debt, and does not say that it is satisfied, and refuses to pay it, alleging, at the same time, an insufficient excuse for not paying it, the law will, in these cases, raise an implied promise to pay the debt then acknowledged to be due."

And we consider the doctrine announced in *Oliver vs. Gray,* in *Keplinger vs. Griffith, and in Swan against Sowell,* as the mere enunciation of the principle, that if a party admits a debt to be due, but at the same time refuses to pay it, upon insufficient grounds, the law will raise a promise to pay it, *in invitum,* and against the will of the debtor. But so far from enfeebling, it fortifies the position, that nothing less than a new *assumpsit,* express or implied, will be sufficient to remove the bar interposed by the statute of limitations, after it has once operated upon the demand.

We have seen that the partnership of the appellants was regularly dissolved on the 9th of July 1839, more than three years anterior to the period when these alleged acknowledgments were supposed to have been made by a member of the firm; and the doctrine upon this subject is fundamental, that from the moment the partnership terminates, the partners become distinct persons with respect to each other, and that consequently, one partner can have no power to subject, by his acts or declarations, his former associates, to new obligations, burdens or responsibilities.

In 3 *Kent's Com.,* 62, it is said :

" The power of one partner to bind the firm, ceases immediately on its dissolution, provided the dissolution be occasioned by death, or bankruptcy, or by operation of law; though in cases of voluntary dissolution, notice is necessary, to prevent imposition on third persons, who might continue to deal with the firm. The partners from that time become distinct persons, and tenants in common of the joint stock. One partner cannot impose new obligations on the firm, or vary the form or character of those already existing."

In *Bell vs Morrison*, 1 *Pet.*, 370, *Mr. Justice Story*, when speaking upon this subject, says:

" By the general law of partnership, the act of each partner during the continuance of the partnership, and within the scope of its objects, binds all the others. It is considered the act of each and of all, resulting from a general and mutual delegation of authority. Each partner may, therefore, bind the firm by his contracts, in the partnership business; but he cannot bind it by any contract beyond those limits. A dissolution puts an end to the authority. By force of its terms it operates as a revocation of all power to create new contracts; and the rights of partners, as such, can extend no further, than to settle the partnership concerns already existing, and to distribute the remaining funds."

It is unnecessary to cumulate authorities upon this familiar subject. The principle is fully established, that the power of adjusting the unsettled affairs of the partnership, and as a portion of this authority, the right to collect and pay the outstanding and subsisting debts of the firm, survives the dissolution, as a necessary power, liable as all partnerships are, to arbitrary and sudden terminations; yet with this qualification, and subject to this exception, those who formerly were partners, stand to each other, after the dissolution, as if the association had never been formed.

The promissory note, which forms the subject of the present dispute, was a firm debt, drawn by the appellants during the continuance of their partnership, and for the payment of which, they were therefore originally responsible, *in solido*. This is conceded. But the counsel for the appellants have insisted, that the defendants were exonerated from their original responsibility, for this demand, by force of the statutory bar, in June 1842, and that they cannot be deprived of the protection afforded by the statute, and subjected to a new liability, with respect to this debt, by the acknowledgments and promises of a former partner, made subsequent to the dissolution of the partnership, and after the action of the statute upon the claim had been fully consummated.

In the case of *Atkins against Tredgold,* 2 *Bar. and Cres.,* 23, *Bayley, Justice,* said :

"Here the statute appears to have attached, before the payment was made by Robert *Tredgold,* and therefore *John Tredgold,* being at that time protected, could not be subjected to *any new obligation* by the act of *Robert.*"

In the case of *Sigourney against Drury,* 14 *Pick.,* 391, the court discriminate between a part payment by one of several promissors of a note, within the legal period, and a payment after the statute has attached; and say :

"We consider it a material circumstance, that the payment was made before the statute took effect, and do not mean to give any opinion, as to the effect of payment of interest or principal by one, to affect the liability of others, after the parties are, in fact, exonerated by lapse of time, and the operation of the statute. There is an obvious difference between the effect of a payment within the term, which shall continue an existing liability in force, and such payment made after the liability is barred, to revive and create a new liability."

The cases to which we have just referred, recognise the proposition, that by withdrawing from a joint debtor the protection afforded him by the statute, you subject him to a *new* liability, and it is this principle which is conclusive against the attempt of the plaintiff in this cause, to revive the action against the appellants, by the acknowledgments of *Nathaniel Ellicott.*

After the statute of limitations has operated upon a claim, it is supposed, in the eye of the law, to have been satisfied. Those who formerly occupied the position of joint debtors, covered by a common obligation, no longer stand in that relation to the creditor, or to each other. There is no means of enforcing against them, the *barred* demand. The act, promise, or acknowledgment, which deprives the parties, thus situated, of the benefit of the statute, and subjects them to the payment of a debt from which they were exonerated, practically and necessarily imposes upon them a new liability. And it is perfectly immaterial whether this is accomplished by considering the new *assumpsit,* as creating an independent and substantive cause of action, upon which the creditor must specially declare, or as

restoring vitality and vigor to the remedy, which, by lapse of time had become powerless and useless.

The power thus to implicate and bind the firm, is not to be considered as remaining in any one of the partners, after the expiration of the partnership. It would be a solecism to affirm, that the continuing power to adjust outstanding and subsisting debts, which we have seen survives the dissolution of the partnership, carries with it, as incidental, the authority to revive, as against others, a demand, which, in legal contemplation, is presumed to have been paid, and which is not to be regarded as a subsisting debt, until it has been made so by a new promise.

The authorities upon this branch of the law, are numerous and contradictory, and it is proposed only, to examine a few of the leading cases, relied upon by those who maintain, that an acknowledgment of a subsisting indebtment, by one co-promissor or partner, will remove the bar with respect to the others, even after the statute has operated upon the claim.

The leading case on this subject, and upon the authority of which the more modern cases of *Perham vs. Raynal,* 2 *Bing.,* 306, and *Barleigh vs. Scott,* 8 *B. & Cres.,* 36, were determined, is that of *Whitcomb against Whiting,* 2 *Dougl.,* 652, decided in the *King's Bench* in 1781.

It was an action on a joint and several promissory note, executed by the defendant and several others. The defendant pleaded the statute of limitations, on which issue was joined. At the trial, the plaintiff established the note, and, to take the case out of the statute, proved payment of interest, and part of the principal, by one of the other parties to the note, within six years. Upon this evidence there was a verdict for the plaintiff.

*Lord Mansfield,* on discharging the rule for a new trial, said :

" The question here is, only, whether the action is barred by the statute of limitations? When cases of fraud appear, they will be determined by their own circumstances. The payment by one is payment for all, the one acting virtually for the rest; and in the same manner, an admission by one is an admission by all, and the law raises the promise to pay, when the debt is admitted to be due."

The correctness of this decision has been sometimes questioned in *England*, notwithstanding the commanding influence of the name of *Lord Mansfield* in *Westminster Hall*. But, we think, without just case. The vindication of the opinion is to be found in the explanation given to it, by *Mr. Justice Bayley*, in *Atkins against Tredgold*, 2 *Bar. and Cres.*, 23, that the part payment of the principal, and the payment of the interest, relied on to take the case out of the bar, was made within the legal term, and before the statute had attached. Until the statute had barred the demand, the promissors were subjected to a joint and common responsibility; and under such circumstances it might well be maintained, that a payment made by one of the parties to the note, was a payment made for the benefit of all. *Willes, J.*, therefore properly remarked:

" That the defendant had the benefit of the partial payment, and must therefore be bound by it."

In the case of *Brandham against Wharton*, 1 *Bar. and Ald.*, 468, *Lord Ellenborough*, after repudiating the authority of *Jackson vs. Fairbank*, 2 *Hy. Blac.*, 340, says, with respect to the case of *Whitcomb vs. Whiting*, 2 *Dougl.*, 652 :

" That the acknowledgment was not, indeed, by the party himself, but by one of the parties *bound*, and who could be called upon for contribution."

Can it be affirmed, that a defendant is benefited by the payment of a debt which he has not admitted to be due, and which, in law, he is under no obligation to pay ? Or that one co-promissor who pays a debt barred by the statute, against the consent of his co-debtor, can maintain against him an action for contribution? We think not.

Upon this point, *Mr. Justice Story*, in a note to his *Treatise on Partnership*, sec. 323, says :

" It is not correct to assert, that payment by one partner, after a dissolution, of any debt, as a supposed partnership debt, binds the other partners. They have the right to say, that it never was, or was not at the time of the payment, an existing partnership debt. Suppose it had been already paid, or extinguished, how is the partner liable to pay it again. It is assuming the very point in controversy, to insist that a debt, once

barred by the statute of limitations, is not extinguished, if voluntarily revived by the acknowledgment of one of the partners."

In *Peaselee vs. Breed,* 10 *New Hamp. Rep.,* 48, the action for contribution was sustained upon the circumstances of the case. But the court say :

" Had it appeared that *Peaselee* was at any time discharged by the operation of the statute of limitations, and that he, or his administrator, after that, refused to avail himself of the defence, and *voluntarily* paid money which he could not at the time have been compelled to pay, it would have presented a very different question."

We infer, therefore, from the remarks of *Willes, Justice,* in 2 *Dougl.,* 652; from the reasoning of *Lord Ellenborough,* in *Brandham vs. Wharton;* and from what was announced by *Mr. Justice Bayley,* in *Atkins vs. Tredgold,* that the decision in *Whitcomb vs. Whiting,* rested upon the fact, that at the period when the partial payment was made, the statute of limitations had not acted upon the demand, and that there was therefore, with respect to the debt, a continuing joint liability. It is upon this hypothesis alone, that one of the joint debtors could be considered as virtually the agent of the others.

In the case of *Pease against Hirst,* decided in 1829, 10 *Bar. and Cres.,* 122, it appeared, that interest on the note had been paid annually by *Hirst,* one of the makers. The statute of limitations never attached. And it was held that it was not a bar, as interest had been paid on the debt within six years, by one of the four persons jointly liable.

In the case of *Channell against Ditchburn,* decided in the *Court of Exchequer,* in 1839, 5 *Mees and Wel.,* 494, it was held :

" That payment of interest by one of the makers of a joint and several promissory note, though made more than six years after it became due, was sufficient to take the case out of the statute of limitations, as against the other maker."

*Parker, Baron,* so ruled, but observed :

" That it does seem a strange thing to say, that where a person has entered into a joint and several promissory note with

14    v. 7

another person, he thereby makes that other his agent, with authority, by acknowledgment or payment of interest, to enter into a *new contract* for him.''

With regard to this case, it may be said, that if the doctrine announced by the court be correct, the counsel for the appel- lants were warranted in invoking it, as an authority on the side of the proposition for which they contend. For the principle is established in the law of partnership, that after the dissolution of the firm, one partner cannot bind his co-partners by a *new* contract.

But we apprehend, that the error of the learned Baron con- sisted in his not discriminating between a payment of interest, made before and after the statute had attached. In the former case, a payment by one of the makers of a promissory note, might be regarded as a payment by all, because at the time of the payment, the parties were jointly liable for the debt, and one might therefore be considered as the agent of the other, with respect to the debt.

The condition and relation of the parties is changed, as soon as the bar of the statute has become complete. They are no longer bound for the debt. It is impossible to maintain, that a partner or maker of a promissory note, is, in law, liable for the claim after the statute of limitations has operated upon it. He may become responsible, but it is by force of a new promise.

It was the opinion of *Lord Tenterden,* in *Martin and Bridges vs. Elmore,* 3 *Car. and Paine,* 83 :

That the acknowledgment made by a partner, who was not himself liable at the time when he made it, was not sufficient to take the case out of the statute of limitations, so as to charge his co-partner.

The case of *Goddard vs. Ingram and Wartnaby,* decided in the *Queen's Bench,* in 1842, 3 *Gale and David.,* 46, was cited by the counsel for the appellee.

It was there held, that a payment made by one partner, after the dissolution of the partnership, on account of a partnership debt, and after six years had elapsed, without any acknow- ledgment of the debt, was sufficient to take the case out of the

statute of limitations, as against the other partner, though the jury found that the payment was fraudulently made, against his consent, and in concert with the creditor, to revive the debt. And it must be conceded, if that case could be regarded as authoritative, it would be conclusive upon the point now under consideration.

But we cannot recognise the ruling of *Lord Denman,* as containing the correct doctrine upon this subject.

In *Whitcomb vs. Whiting, Lord Mansfield* anticipated a case like this, and said, when cases of fraud appear they will be determined by their own circumstances. And certainly the legal proposition is perfectly clear, that from an acknowledgment tainted and vitiated by fraud, the law would infer no promise.

We have examined the record in *Ward against Howell,* reported in 5 *Harr. and John.,* 60, and find that the point raised by this exception, was not presented in that case for the consideration and judgment of the Court of Appeals.

It was an action of *assumpsit,* brought by the appellees against the appellant, and *Chandler* and *Raison,* to recover the sum of $188.43, alleged to be due by them as partners.

The defendants confessed the promises alleged in the declaration, subject to the opinion of the court, on the following statement of facts:

"It is agreed that the co-partnership existed between *Peregrine Ward, Philip F. Raison,* and *Francis B. Chandler,* from a period prior to the signing of the paper, hereafter mentioned, till the fall of 1814, at which time the said co-partnership was dissolved. That on the 17th of August 1815, after the dissolution of the co-partnership, and after the knowledge of such dissolution on the part of the plaintiffs, *Philip F. Raison,* one of the co-partners aforesaid, subscribed the paper hereto annexed, in the manner as thereby appears. It is submitted to the court, whether the signature of *Philip F. Raison,* made as aforesaid, is evidence to prove the existence of the debt against the said *Peregrine Ward.*"

It appears that the single question raised by the case stated for the determination of the court, was, whether the admission

of one partner, made after the dissolution of the partnership, was evidence to prove the existence of the debt against the other partners.

Upon this point the court said :

"The evidence was not sufficient to charge the partnership with a debt, though it would be sufficient to take the debt out of the statute of limitations."

The observation of the court with respect to the statute of limitations, is, of course, a *dictum;* and the language used is so general, that we cannot assume that the learned court intended to intimate an opinion, that the admission of one partner would be sufficient to remove the bar, in a case where the statute had attached.

, The question, then, is to be treated as an open one in *Maryland;* and we consider the safe and sound doctrine to be, both upon principle and analogy, that the acknowledgment of one partner, of a subsisting partnership debt, if made subsequent to the dissolution of the partnership, and after the statute of limitations has operated on the demand, is not evidence against his co-partners, so as to deprive them of the benefit of the statutory bar.

Upon this ground we reversè the judgment of the county court.

We desire to be understood as expressing no opinion, with reference to the sufficiency of the acknowledgments, relied on by the appellee to take the cause out of the statute of limitations; and the view we have taken of the defence, presented by that statute, renders it unnecessary to decide the various questions which were agitated in the argument of the cause.

JUDGMENT REVERSED, AND

NO PROCEDENDO AWARDED.

DORSEY, J., dissented.

The appellee afterwards, at the same term, moved for a writ of *procedendo,* to enable him to re-try the cause, and supply further evidence upon the subject of limitations. That motion is still depending.