# JOHN J. ABRAHAMS *vs.* JOSEPH MYERS & BRO., A. F. FAWCETT & Co., and A. F. FAWCETT.

*Partnership—Dissolution—Statute of Limitations—Admissions by one Partner as binding on the other—Claims of Creditors when to be treated as Filed, so as to suspend the running of the Statute of Limitations—When a Partnership is to be treated as dissolved.*

A bill was filed by one partner against his co-partner, involving questions exclusively between themselves. In producing testimony to support the allegations of his answer, the defendant examined certain creditors of the partnership, as witnesses, to prove the existence of their claims, and with their testimony the vouchers of their claims were filed with the commissioners, and by him returned as part of the evidence in the cause. The vouchers were filed in July and August, 1867. Upon the evidence taken under the commission, showing the manner in which the partnership affairs had been conducted, and their condition at the time of filing the bill; the Court on the 15th of June, 1868, decreed a dissolution of the partnership, and ordered an account of its affairs to be taken in the usual way. On the 25th of May, 1869, the Court ordered that notice should be given by publication, to the creditors of the partnership to file their claims with the clerk of the Court. The creditors above mentioned, thereupon, in order that they might come in under this order, applied for, and obtained leave to withdraw the vouchers of their respective claims remaining on file, in the evidence taken under the commission, and they then on the 2nd of July, 1869, filed their claims with the clerk as the order directed. All of these claims originated in the months of January or February, 1864. HELD:

That the claims were not filed for the purpose of claiming distribution, and in such sense as to make the creditors parties to the proceedings until they were filed, under the order of July 2nd, 1869, and that the Statute ran against them to that date.

In a suit instituted for the benefit of creditors generally, or where creditors are called in by authority to receive distribution from a fund under the control of the Court, the day of filing the petition to be admitted, or the day of

filing the voucher or evidence of the claim, is considered as the commencement of the suit as to such creditor, and from that day the Statute ceases to run against the claim.

But to entitle him to this *status,* he must come into Court in a proper case, as a party claimant, and be ready to assume the burden of establishing his claim as against any opponent who may lawfully resist it.

One of said creditors testified that in the years 1866 and 1867, he had conversations with the defendant partner, in which the latter referred to the claims in dispute, and acknowledged them, and desired to know whether they had been settled, and referred to the fund out of which they ought to be paid ; that he saw the defendant in Chicago four or five times in 1867, and he, (defendant,) always wanted to know, if the said claims had been settled. HELD :

That these acknowledgments were sufficiently definite, and certain to raise an implied promise on the part of the co-partners to pay, and consequently to remove or prevent the bar of the Statute, provided the defendant had, at the time of the acknowledgments, authority to make them so as to bind his co-partner.

The defendant had made a contract with the government to supply it with beef cattle, and entered into the partnership with the complainant for the purpose of fulfilling that contract. At the time of filing the bill in this case, the contract had not been fulfilled, and cattle were then being bought to furnish the government under it. No notice was given of dissolution or of intention to dissolve, and neither party treated the partnership as legally dissolved, until the decree of the 15th of June, 1868, although active business operations were suspended by the injunction issued at the instance of the complainant on the filing of the bill. HELD :

1st. That the partnership existed until the filing of the decree of dissolution on the 15th of June, 1868.

2nd. That the acknowledgments of the claims of the creditors by the defendant in 1867, were binding on both the partners.

APPEAL from the Circuit Court·of Baltimore City.

The bill in this case was filed by the appellant against his co-partner for an account of the partnership transactions, and for an injunction. The injunction was granted as prayed, and during the progress of the cause certain creditors of the partnership filed their claims under the

circumstances stated in the opinion of the Court. The appeal in this case is taken from a decree of the Court below, (Pinkney, J.,) allowing these claims as against the partnership assets.

The facts of the case are stated in the opinion of the Court.

The cause was argued before Bartol, C. J., Stewart, Bowie, Grason, Miller and Alvey, J.

*Orville Horwitz* and *S. Teackle Wallis,* for the appellant.

The bill in this case was filed on 15th February, 1864. The claim made by Myers & Bro., is for cattle sold and delivered on *January 28th,* 1864. The last item in Fawcett & Co's claim is February 17th, 1864. The last item in Fawcett's claim is *February 12th,* 1864. All the claims, then, were anterior to the date of the bill, (except $12.) By limitations then, all the claims were barred certainly *by 17th February,* 1867.

As claims against the partnership fund, (so called) these accounts were filed for the first time, in July, 1869, under the notice to creditors, ordered by the Court, on 25th May, 1869, six years after any liability on them was incurred; of course all evidence tending to show a new promise on the part of the debtors must apply to a period *later than July,* 1866. *There is no evidence of that character in the record.* The *testimony of Myers and of Carson end with the year* 1865. The only evidence that might have had some application to this period is Fawcett's testimony.

In this condition of the proof the effort is made to satisfy the Court, that, the offering of certain claims in evidence by witnesses produced in support of the allegations of the answer is *the production of a voucher for payment of a claim, and of itself, makes the witness a party to the cause, and the*

voucher produced a claim against the fund in litigation.
For this purpose, the appellees rely on the testimony given
on 25th July, 1867, as fixing the date of filing their
claims.    The correctness of this view is denied on the part
of the appellant.  See *McDowell vs. Goldsmith,* 24 *Md.,* 231.

The only evidence offered in support of a new promise
to pay *in order to bind the complainant,* is not any admis-
sion or promise on *his* part to pay the debts, but supposed
admissions made by Wallis, the respondent, after the filing
of the bill in this case ; and such admissions, made by a
party, who was once a partner, (no matter what may be
the relations of the parties at the time of the admissions,)
are supposed to be binding on his co-partner.

There is no evidence of any such admission or of said
new promise as is required by the law of Maryland, to
defeat the operation of the Statute.

All promises and admissions after dissolution and after
the Statute had attached, are not binding on the co-partner ;
and this involves the question of the date of the dissolution,
which will be maintained to be either at the end of forty
days from the date of the contract with the government, or
at the date of filing of the bill.    *Ellicott vs. Nichols,* 7
*Gill,* 96 ;  *Lingan vs. Henderson,* 1 *Bl.,* 277–278 ;  *Van-
keuren vs. Parmelee,* 2 *Comstock,* 525 ;  *Bell vs. Morrison,* 1
*Peters,* 351 ;  *Reppert vs. Colvin,* 48 *Pa.,* 248 ;  *Shoemaker
vs. Benedict,* 1 *Kernan,* 176–186 ;  *Gow on Partnership,*
239.

No promises or admissions made by one partner can bind
another after litigation begun between them in reference to
the settlement of their partnership matters, and more
especially admissions made by a party against whom an
injunction is pending, at the suit of his co-partner, on the
ground of fraud.

*Bernard Carter* and *I. Nevett Steele,* for the appellees.

It being clear, that Abrahams and Wallis were partners
in the beef contract, this partnership existed up to June

15th, 1868, when it was dissolved as of that date by the Court. This cannot be denied by complainant, as in the first place the Court could not have dissolved the partnership unless it existed at that time. 2nd. Above all others, complainant cannot deny its then existence, as he then contended, that instead of being dissolved, the execution of the contract of partnership should be specifically enforced.

All admissions made by Wallis as to the claims of Myers and Fawcett, as against the partnership prior to the date of its dissolution, (June 15, 1868,) are binding upon the partnership, and upon complainant as a member thereof. *Story on Part.*, sec. 107 ; *Ellicott vs. Nichols*, 7 *Gill*, 86–106; *Hopkins vs. Boyd*, 11 *Md.*, 107 ; *Lingan vs. Henderson*, 1 *Bland*, 277–278.

The claims of Jos. Myers & Bro., A. F. Fawcett & Co., and A. F. Fawcett, as stated in the auditor's account, are abundantly proved by the evidence taken under the commission and before final decree, and as to Myers' claim again proved by the evidence taken before the auditor, to be claims against the partnership of the most valid and equitable kind, being as to Myers' claim for cattle furnished to said partnership, and the purchase money of which was a part of the very money belonging to said partnership which the bill in this case was filed to reach ; and as to the claims of Fawcett & Co., and Fawcett, individually, the one was for feed for cattle furnished to complainant and Wallis as partners, and for services rendered in buying them.

The admissions made by Wallis as to the claims in question, as proved by Mr. Carson and by Myers, Fawcett and Follansbee, in their evidence taken before the auditor, establish these claims as of January 1st, 1866, at least.

There is no need that the *amount* of the claims should have been specified in these admissions. *Guy vs. Tams*, 6 *Gill*, 84 ; *Quynn vs. Carroll*, 10 *Md.*, 197 ; *Dawson vs. King*, 20 *Md.*, 442.

The claim of Myers and Brother was first filed in this case, July 30th, 1867.

The claim (the check for $5621.31) was filed with the commission by express directions of Myers.

The claim of Fawcett & Co. was filed August 6th, 1867, and of Fawcett, July 25th, 1867.

Being therefore, living claims on January 1st, 1866, they were of course still living in July, 1867.

The claims of Myers & Fawcett and Fawcett & Co., were all re-filed in July, 1869—having been withdrawn for such purpose by petition. This re-filing was really unnecessary, though harmless, and was for the purpose of filing with the auditor, whereas before they had been filed with the commissioner.

Any claim, therefore, which was not barred June 15th, 1868, and which was filed under the notice given under the order of May 25th, 1869, if filed in the time limited (as all our claims were,) is to be considered as much alive as they were June 15th, 1868, when the decree of dissolution and accounting was passed.

But as filed in July, 1867, they were properly filed. The Statute runs no longer against claims than the filing of vouchers of them. *McDowell vs. Goldsmith,* 2 *Md. Ch. Dec.,* 370; *Ohio L. & T. Co. vs. Winn,* 4 *Md. Ch. Dec.,* 253; *Welch vs. Stewart,* 2 *Bland,* 41; *Hall vs. Ridgely,* 33 *Md.,* 308; *Hammond vs. Hammond,* 2 *Bland,* 308, 363; *Post vs. Mackall,* 3 *Bland,* 495, 498; *McDowell vs. Goldsmith,* 24 *Md.,* 230, 231.

This being practically a bill for the settlement of the claims of the creditors of the partnership, the creditors had a right to file their claims at any time. *Thompson vs. Fowler,* 15 *Md.,* 24.

ALVEY, J., delivered the opinion of the Court.

There are two leading questions presented by this appeal. 1st. Whether the claims of the appellees, Myers & Bro., A.

F. Fawcett & Co., and A. F. Fawcett, are established by proof. And 2nd. Whether those claims are barred by the Statute of Limitations. To determine these questions it will be necessary to consider some others which are incidentally involved.

1. In regard to the question whether the claims are sufficiently established by proof, we think the answer must be in the affirmative. Apart from the evidence furnished, of the dealings and transactions out of which the claims arose, there is full and complete evidence of the repeated recognitions and admissions of the existence and correctness of the claims by Wallis, the active business partner of the appellant, while the partnership was in existence, and he, Wallis, was clothed with full power to bind the firm.

This being the case, there can be no doubt of the claims being sufficiently proved, and are therefore entitled to be paid out of the partnership assets, unless they are barred by the Statute of Limitations, which has been pleaded and relied on by the appellant.

2. In considering the question of the application of the Statute, we must ascertain with correctness, and bear in mind the dates that are involved. The claim of Myers & Bro. originated on the 25th and 28th of January, 1864; that of A. F. Fawcett & Co., from January 15th to February 17th, 1864; and that of A. F. Fawcett, from January 25th to February 13th, 1864; and consequently the Statute would become a bar at the expiration of three years from those dates, unless prevented by admission or promise by a party with competent authority to bind the partnership, or unless legal proceedings were taken in respect to such claims within three years from the time they were contracted, or from the time they were last acknowledged or promised to be paid. And in this connection it becomes important to understand what was the character of the proceedings that were originally taken in this case, and to ascertain when the partnership between Wallis and the appellant was really dissolved.

The bill was filed by the appellant against Wallis, his co-partner, on the 15th of February, 1864. At the time the bill was filed, Wallis was engaged in purchasing and supplying beef cattle, under the contract with the U. S. Government, in the purchase and supply of which cattle Wallis and the appellant had become partners; and the object of the bill was to obtain an injunction to restrain Wallis from disposing of certain cattle then on hand, and from drawing and applying to his own use, or from in any manner controlling, certain funds that had been received for cattle previously supplied to the government under the contract. The bill was not filed for the benefit of the partnership creditors, nor did it allege that any such creditors existed. An account of the partnership affairs was prayed, but it was not alleged that dissolution had taken place, nor was dissolution prayed to be decreed by the Court. It was only in the answer of Wallis that the fact was disclosed that there were partnership creditors in existence, and he did not, by his answer, pray that they might be called in to have their claims liquidated. The controversy, on the allegations of bill and answer, was exclusively between the two partners themselves. In producing evidence to support the allegations of his answer, Wallis examined the present appellees as witnesses, to prove the existence of their claims, and with their testimony the vouchers of the claims were filed with the commissioner, and by him returned as part of the evidence in the cause. This filing of the vouchers with the commissioner occurred in July and August of 1867. Upon the evidence taken under the commission, showing the manner in which the partnership affairs had been conducted, and their condition at the time of filing the bill, the Court, on the 15th of June, 1868, after full hearing, and concluding that there was no longer any reason for continuing the partnership in existence, decreed its dissolution, and ordered an account of its affairs to be taken in the usual way. On the

24th of March following, Wallis filed in the cause a peti-
tion, suggesting that there were unpaid creditors of the
partnership, and that a partnership account could not be
fairly stated until the creditors were brought in, and their
claims paid from the partnership assets ; and he therefore
prayed an order of Court requiring notice to be given to the
creditors to file their claims duly authenticated. To this
application the appellant responded, denying the existence
of unpaid creditors, and consequently the necessity of any
such notice as was prayed to be given. The Court, how-
ever, on the 25th of May, 1869, ordered that notice should
be given, by publication, to the creditors of the co-partner-
ship to file their claims with the clerk of the Court, duly
authenticated, on or before the 1st day of September, then
next. Whereupon the appellees, that they might come
in under this order, applied for and obtained leave to
withdraw the vouchers of their respective claims remaining
on file in the evidence taken under the commission, and
they then, on the 2nd of July, 1869, filed their claims with
the clerk, as the order directed.

Now, of the general proposition, that, upon a plea of the
Statute of Limitations interposed to the claim of a creditor
coming in under the order or decree of the Court, the time
of the running of the Statute is to be computed to the time
of the actual filing of the claim in Court, there can be no
doubt. This is not disputed. But the question is, what
is a sufficient filing of the claim to stop the running of the
Statute ? On the part of the appellees, it is contended that
the filing of the vouchers of their claims with the commis-
sioner, in connection with their evidence, when examined
as witnesses, was a sufficient compliance with this rule of
practice, and that the claims should be regarded as filed
from that time, when the Statute should cease to run against
them ; while, on the contrary, it is contended by the appel-
lant that the claims were not filed for the purpose of claim-
ing distribution, and in such sense as to make the credi-

tors parties to the proceedings, until they were filed under
the order of Court, on the 2nd of July, 1869, and that the
Statute ran against them to that date. And of the cor-
rectness of this latter position we think there can be no
question. The bill, as we have seen, was not filed for the
benefit of creditors, and at the time the appellees were
examined as witnesses under the commission, and exhibited
the vouchers of their claims in evidence, there was no au-
thority for the appearance of creditors as claimants in the
cause. In a suit instituted for the benefit of creditors gen-
erally, or where, as in this case, creditors are called in by
authority to receive distribution from a fund under the con-
trol of the Court, the day of filing the petition to be ad-
mitted as a creditor, or the day of filing the voucher or evi-
dence of the claim, is considered as the commencement of
the suit as to such creditor, and from that day the Statute
ceases to run against the claim. From that day the claim-
ant becomes a party to the proceedings, and is entitled to
participate in their further prosecution. But, to entitle
him to this *status*, he must come into Court in a proper case,
as a party claimant, and be ready to assume the burden of
establishing his claim as against any opponent who may
lawfully resist it.

Here it is manifest, the claims were not filed with the
commission with any view of making the claimants parties
to the proceeding, nor were the claims filed in the assertion
of any right to receive distribution from the particular
fund in controversy between the partners. The appellees
at that time were mere witnesses, and the vouchers of
their claims were produced as part of their evidence, in
support of the defendant Wallis' position in the litigation
with his partner.

It thus appearing that the appellees did not become par-
ties to the proceedings until the 2nd of July, 1869, it is
clear the Statute of Limitations had become a conclusive
bar to their claims before that time, unless relieved from its

operation by some competent acknowledgment or promise made since the 2nd of July, 1866. Does the record disclose evidence of any such acknowledgment or promise as will relieve these claims from the bar of the Statute?

It is not pretended that there ever was any such acknowledgment or promise made by the appellant; but the record abounds with evidence of the most explicit acknowledgments of these claims, and expressions of desire for their payment, by Wallis, the other partner, made during the years of 1864 and 1865. He particularly requested his counsel, Mr. Carson, to attend to it, and to co-operate with the claimants, in order that they should be paid out of the fund in controversy, being that on deposit with Purvis & Co. The only witness, however, who testifies as to any acknowledgment of these claims by Wallis after July, 1866, is A. F. Fawcett, one of the claimants. This witness testifies to conversations held with Wallis in Chicago, Ill., in the years 1866 and 1867. He says, that in these conversations Wallis referred to the claims now in dispute and acknowledged them, and desired to know whether they had been settled, and referred to the fund out of which they ought to be paid. He testifies that he saw Wallis in Chicago four or five times in 1867, and to the best of his knowledge, he, Wallis, always wanted to know if the claims of witness and Myers had been settled; it being understood that the fund, out of which Wallis desired payment to be made, was involved in litigation.

This witness, though one of the claimants and therefore deeply interested, is not impeached; and when we take into consideration the previous declarations and conduct of Wallis in regard to these claims, and particularly his interest in their payment as expressed to Carson, the testimony of Fawcett is not in the least improbable. And taking his evidence as true, as we must do, we think the acknowledgments of the claims proved by him, as made by Wallis, in 1867, are sufficiently definite and certain, in

view of the decisions of this Court, to raise an implied promise on the part of the co-partners to pay, and consequently to remove or prevent the bar of the Statute, provided Wallis had at the time of these acknowledgments authority to make them so as to bind his co-partner.

Whether Wallis was clothed at the time with authority to make acknowledgments to bind the appellant was a question much discussed in the argument at bar. It was contended for the appellant that, no matter what admissions or promises may have been made by Wallis, in respect to these claims, within the three years immediately preceding the time when the claims were filed under the notice to creditors, such admissions or promises in no manner bind or affect the appellant, as before that period the partnership had been dissolved, and all authority in his former partner to make such acknowledgments or promises to bind the partnership had ceased. Whether this proposition is well founded or not is the only question remaining to be determined.

Where the partnership is not strictly at will, and there has been no dissolution by agreement, or by events that effect a dissolution *per se,* or by operation of law, the dissolution dates from the decree,—certainly as to third parties; *Besch vs. Frolick,* 1 *Phil.,* 172; but where the partnership is at will and there has been no notice, but a bill filed, requiring an account and settlement of partnership affairs, the dissolution will be regarded as having taken place from the filing of the bill. *Shepherd vs. Allen,* 33 *Beav.,* 577.

Here, as we have seen, the bill, while praying an account, did not pray a dissolution, and the partnership was not at will, but for the completion of a particular enterprise or undertaking, and consequently for such time as might be required for its accomplishment. The time limited in the contract with the Government for the supply of the beef cattle was forty days, but that limitation was for the benefit and protection of the Government; and if the

latter was content to extend the time and allow the cattle to be furnished after the time mentioned in the contract had expired, the partnership between Wallis and the appellant would continue unless otherwise dissolved, until the contract with the Government was fulfilled. At the time of filing the bill the contract had not been fulfilled, and cattle were then being bought to furnish the Government under the contract. No notice was given of dissolution or of intention to dissolve, and neither party seems to have regarded the partnership as legally dissolved until the passage of the decree of the 15th of June, 1868. That the partnership subsisted to that date, though its active business operations were suspended by the injunction, we think is free of doubt. The solemn decree of dissolution by the Court below would have been an useless form, if dissolution had in legal contemplation previously occurred.

It thus being clear that the partnership had legal existence until dissolved by the decree of the 15th of June, 1868, it follows that the acknowledgments of the claims by Wallis in 1867, were binding on both the partners, Wallis and the appellant, the claims having been contracted in the course of the business of the partnership, and by Wallis, the partner specially entrusted with the power of contracting for and on behalf of the firm. *Ellicott vs. Nichols,* 7 *Gill,* 85 ; *Sandilands vs. Marsh,* 2 *B. & Ald.,* 678.; *Pars. on Part.,* 192, 193.

It results that the decree appealed from must be affirmed with costs.

*Decree affirmed.*

(Decided 24th June, 1874.)