LEWIS SCHINDEL *vs.* CHRISTIAN GATES.

*Principal and Surety—Statute of Limitations.*

The payment by the principal, year by year, of the interest on a joint and several promissory note, will prevent the Statute of Limitations from attaching to the note in favor of the surety.

The rule on this subject, laid down in *Ellicott vs. Nicols,* 7 *Gill,* 86, has been the accepted law of this State for nearly thirty years, and in the absence of legislation to the contrary, it is not to be questioned.

APPEAL from the Circuit Court for Washington County.

This suit was instituted by the appellee on the 4th day of February, 1876, against Jonathan Middlekauff and the appellant, to recover the amount of a joint and several promissory note for $765.00, dated March 31, 1866, payable in one year with interest, from date, signed by Jonathan Middlekauff, and the appellant, Lewis Schindel.

At the trial, Schindel pleaded non-assumpsit, limitations, and that he was the mere surety for Middlekauff, and gave him no authority to do any act so as to revive the note against him, and thereby defeat his plea of limitations.

Issue was joined on the first two pleas, and a demurrer interposed to the third plea, which demurrer was sustained by the Court.

The case as against Schindel was tried before the Court, (MOTTER, J.)

*First Exception.*—The plaintiff, to sustain the issues on his part joined, gave in evidence the note sued on in this case, and the counsel of the defendant admitted that the signatures to said note were genuine. The plaintiff then proved by himself, that he got said note at the office of

Mr. Wiles, his attorney, who had collected some money for him, and as his attorney, and at his request, had re-invested the same for him, the plaintiff, in the said note, and had received said note as attorney for the plaintiff, and that said Wiles gave the note to the plaintiff some time after its execution, and that the plaintiff never personally knew the defendant Lewis Schindel.

And then further to support the issues joined on his part, offered to prove by the plaintiff, that said Jonathan Middlekauff, in each and every year since the making of said note, up to April 1st, 1874, had paid the interest due on said note as said interest became due, and said Jonathan Middlekauff, on April 1st, 1874, promised to pay said note to the plaintiff. The defendant, Lewis Schindel, objected to the said evidence so offered, but the Court overruled the objection and admitted the evidence. The defendant excepted.

*Second Exception.*—The defendant further to prove the issue on his part joined, offered to prove by the plaintiff, that at the time he accepted the note offered in evidence, he, the plaintiff, knew that Jonathan Middlekauff was principal debtor, and that Lewis Schindel was surety on said note: and the plaintiff, by his counsel, objected, and the Court sustained the objection. The defendant excepted.

*Third Exception.*—After the evidence in the aforegoing bills of exceptions had been introduced, the plaintiff offered the following prayer.

1. That if the Court finds from the evidence in the cause that the note sued on was executed and delivered by Jonathan Middlekauff and Lewis Schindel to the plaintiff, and that the said Jonathan paid the interest on said note, from the maturity thereof, annually to the plaintiff, and up to April 1, 1874, and that the said Jonathan, on the 1st April, 1874, before the institution of the suit, promised to pay the said note to the plaintiff, then the Statute of Limitations, as pleaded, is no defence in this action.

And the defendant offered the four following prayers.

1. This defendant, Lewis Schindel, by his counsel, prays the Court to say, that if the Court finds from the evidence that the plaintiff is the payee and holder of the note offered in evidence, and that the plaintiff got the said note at Mr. Wiles', his attorney's, office, and that the plaintiff never personally knew this defendant, and that said note became due on the 31st day of March, 1867, and that this defendant made said note jointly with Jonathan Middlekauff, and that the said Jonathan Middlekauff paid the interest on said note every year up to April 1st, 1874, and said Middlekauff on April 1st, 1874, promised to pay said note to the plaintiff, then on the pleadings in this case, the plaintiff is not entitled to recover, unless the Court further find from the evidence that this defendant, Lewis Schindel, at some time within three years before the bringing of this suit, acknowledged said note, or authorized said Jonathan Middlekauff to make said payments, or any of them, or ratified the making of said payments, or any of them.

2. This defendant, Lewis Schindel, by his counsel, prays the Court to say, that if the Court finds from the evidence that the plaintiff is the payee and holder of the note offered in evidence, and that the plaintiff got said note at the office of Mr. Wiles, his attorney, and that the plaintiff never personally knew this defendant, and that said note became due on the 31st of March, 1867, and that this defendant made said note jointly with Jonathan Middlekauff, and that said Jonathan Middlekauff paid the interest on said note every year up to April 1st, 1874, and said Middlekauff, on April 1st, 1874, promised to pay said note to the plaintiff, then on the pleadings in this case, the plaintiff is not entitled to recover, unless the Court further find from the evidence that this defendant, Lewis Schindel, at some time within six years before the bringing of this suit, acknowledged the said note, or authorized said Jonathan Middlekauff to make said payments, or any of them, or ratified the making of said payments, or any of them.

3. This defendant, Lewis Schindel, by his counsel, prays the Court to say in this case, that said Jonathan Middlekauff had no authority, only and solely from the fact that he was the joint maker with this defendant, Lewis Schindel, of the note sued on in this case, to bind this defendant Lewis Schindel, by any acknowledgment of said note, or by any promise to pay said note, or by any payment on said note, made by him, the said Jonathan Middlekauff, more than three years after the maturity of said note.

4. This defendant, Lewis Schindel, by his counsel, prays the Court, that if the Court find from the evidence, that Jonathan Middlekauff and Lewis Schindel made the note offered in evidence, and that from the time of its maturity to the year 1874, inclusive, the said Middlekauff annually paid the interest on said note, and frequently promised to pay the principal, nevertheless the plaintiff is not entitled to recover under the pleadings in this cause, unless the Court further find that Lewis Schindel personally authorized or ratified said payments or promises, or any of them, or himself promised to pay said note, or himself acknowledged the debt evidenced by said note, within three years before the bringing of said suit. And the Court granted the plaintiff's prayer, and rejected the defendant's prayers. The defendant, Lewis Schindel, excepted.

A judgment was entered for the plaintiff, and the defendant appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Tryon Hughes Edwards* and *Louis E. McComas,* for the appellant.

In regard to the power of one joint maker of a note to deprive the other of the defence of the statute, three distinct and irreconcilable theories are found.

*The First.* That there is such a power, and that it exists indefinitely. *Channell vs. Ditchburn, 5 Mees. and Wells.,* 494; *Goddard vs. Ingram, 3 Gale and David,* 46.

(Both of these cases are specially repudiated in *Ellicott vs. Nichols, 7 Gill,* 105, 106 )

*Whitcomb vs. Whiting,* as construed by the English cases, was a departure from the letter and spirit of the Statute of Limitations.

In England this interpretation of the statute has been partly corrected by 9 *George* IV, *ch.* 14, *sec.* 1, (Lord Tenterden's Act,) and entirely by the Mercantile Law Amendment Act of 1858, 19 and 20 *Vict., ch.* 97, *sec.* 14.

Since which Acts no co-contractor can bind the other by virtue of any promise, acknowledgment or payment of interest or principal. *Smith's Lead. Cas., (7th Ed.,) vol.* 1, *part* 2, *pages* 942, 945, 980 *and* 981; *American Notes to Whitcomb vs. Whiting.*

In Massachusetts, where this theory was once accepted, (*Vid. White vs. Hale,* 3 *Pick.,* 292,) it has been repudiated by statute.

(That case, *White vs. Hale,* has itself been overruled by *Sigourney vs. Drury,* 14 *Pick.,* 391;) *Sm. Lead. Cas., Ibid,* 984 *and* 985.

In Maine, also, where the doctrine was held, it has been changed by the revised statutes. *Sm. Lead. Cas., Ibid,* 981.

So, too, in Vermont. *Rev. Stat., ch.* 28, *secs.* 22–27.

*The Second.* That there is no such power.

This second theory is held in Supreme Court U. S , *Bell vs. Morrison,* 1 *Peters,* 351; in New Hampshire, *Exeter Bank vs. Sullivan,* 6 *N. H.,* 124; in Ohio, *Palmer vs. Dodge,* 4 *Ohio N. S.,* 21–36; in Pennsylvania, in a series of well considered cases: *Coleman vs. Fobes,* 22 *Pa. St.,* (10 *Harris,*) 156; *Levy vs. Cadet,* 17 *Serg. & R.,* 126; *Searigh vs. Craighead,* 1 *Penn. Rep.,* 135; *Howser vs. Irvine,* 3 *Watts & S.,* 345; *Schoneman vs. Fegley,* 7 *Barr.,*

433 ; *Bush vs. Stowell,* 71 *Pa. St.,* 208 ; *Reppert vs. Colvin,* 48 *Pa. St.,* 248.

In New York, where the first theory was adopted in the earlier cases, it has been entirely repudiated, and this second doctrine is now maintained, in cases very ably reasoned. *Vankeuren vs. Parmalee,* 2 *N. Y.,* (*Comstock,*) 523 ; *Payne vs. Slete,* 39 *Barbour,* 634 ; *Shoemaker vs. Benedict,* 11 *N. Y.,* 176 ; *Winchell vs. Hicks,* 18 *N. Y.,* 558 ; *Dunham vs. Dodge,* 10 *Barbour,* 556.

Wherein it is said that a part payment by one co-contractor will not bind the other, whether such acknowledgment be made before or after the bar of the Statute.

And see the cases cited : *Sm. Lead. Cas., Ibid,* 982 *and* 983.

And the latest case, *Layberry vs. Willoughby, Nebraska Sup. Ct., January T.,* 1877. *5 г. ١⁄٢. 368*

*The Third.* (A middle ground.) That there is such a power, but that it ends when the legal term prescribed by the statute has elapsed.

This doctrine rests "on the ground that the common interest, which alone makes the admission of one debtor binding on another, ceases whenever the statute takes effect, and leaves both in the position of mere strangers, who are not answerable for each other's words or acts." *Sm. Lead. Cas., Ibid,* 684, and cases cited.

It appears that in most of the States as well as now in England, the second doctrine prevails either by legislation or adjudication.

Whilst comparatively few States adopt the third doctrine, among which is Maryland. See *Ellicott vs. Nichols,* 7 *Gill,* 85 ; *Newman vs. McComas,* 43 *Md.,* 70 ; *McCann, et al. vs. Sloan & Caldwell,* 25 *Md.,* 588 ; *Lingan vs. Henderson,* 1 *Bland,* 236.

In *Ellicott vs. Nichols,* the sentence, which, after the conclusion of the reasoning, gives the rule laid down by the case, is, " the acknowledgment of one partner of a sub-

sisting partnership debt, if made subsequent to the disso-
lution of the partnership, and after the Statute of Limita-
tions has operated on the demand, is not evidence against
his co-partners, so as to deprive them of the benefit of the
statutory bar." (*Page* 108.)

The words "the Statute of Limitations has operated on
the demand," are used as equivalent to the words, (used
all through the opinion in *Ellicott vs. Nichols,*) "the
Statute of Limitations has attached to the note," which
last words are more clearly defined in *Newman vs. McComas,*
42 *Md., page* 79, bottom of page, as equivalent to "three
years after the date of the note," which the note, in that
last case, being payable on demand, are equivalent to three
years after the maturity of the note.

The promise of one co-contractor to avoid the Statute as
to the other, must have two qualities :

1st. It must have force to revive the debt, *i. e.,* be within
three years after maturity.

2d. It must be within the issue, *i. e.,* be within three
years before suit brought.

That these incidents are each essential to a binding
promise has recently been decided by this Court in *Newman
vs. McComas.* In that case, also, the doctrine of continu-
ing promises was invoked by counsel to bind one late part-
ner by the promise of the other    The Court, in deciding
how the plaintiff's prayer should have been drawn, say
that the words "*promise made before the Statute of Limi-
tations had attached to the note,*" are equivalent to the
words, "*such promise had been made within three years after
the date of the note,*" (*i. e.,* after maturity,) and also that
"*such promise had been made within three years before the
institution of the suit.*" That both conditions are "neces-
sary to remove the bar of the statute ;" thus repudiating
the doctrine of continuing promises. *Newman vs. McCo-
mas,* 43 *Md.,* 79 *and* 80 ; also, in *Smith vs. Caldwell,* 15
*Rich.* (*S. C.,*) *Law,* 365.

The distinction taken in some cases, between a new promise being a new contract supported by the old contract, and its being a revival of the old contract, seems to be "a distinction too thin and subtle to be received with satisfaction." *Vid.* opinion of HARRIS, J., in *Carshore vs. Huyck*, 6 *Barb.*, (*N. Y.*,) 583.

This Court having said that the "new promise alone gives vitality and is substantially the cause of action." *Ellicott vs. Nichols*, 7 *Gill*, 90.

The reasoning in *Bell vs. Morrison* would have been equally conclusive, omitting the remarks of Mr. Justice STORY, about the new cause of action.

In either view, the reasoning of the best considered cases applies with equal force in support of the bar of the statute.

Especially since the modern, and now the only prevailing, view is to regard the Statute of Limitations as a beneficial statute, as a statute of repose, one on which defendants have a right to rely with the same confidence as on any other statute, and the force of which should be extended rather than restricted. *Sm. Lead. Cases*, 980; *Angell on Limit.*, (6 *Ed.*,) 283-18 *and* 20; *Shoemaker vs. Benedict*, 11 *N. Y.*, 176; *Winchell vs. Hicks*, 18 *N. Y.*, 558; *Green, Executor vs. Johnson, et ux.*, 3 *Gill & Johns.*, 394; *Fisher vs. Hamden, Paine*, 61.

By the demurrer and the second exception, the appellant raises the question whether a defendant who has signed his name as joint maker of a note, and who is in fact a surety, and is accepted by the payee as such surety only, cannot plead or offer in evidence the suretyship at law in a suit brought by the payee. *Yates vs. Donaldson*, 5 *Md.*, 389; *Ives vs. Bosley*, 25 *Md.*, 262; *Harris vs. Brooke*, 21 *Pick.*, 195.

And if so, is not the statute a defence for such surety when, he has not, within three years before suit brought, acknowledged the note in any way. *Angell on Limit.*, 218

*and* 219 ; *Lowther vs. Chappell,* 8 *Ala.,* 353 ; *Knight vs. Clements,* 45 *Ala.,* 89 ; *Emmons vs. Overton,* 18 *B. Monroe,* 643 ; 1 *Rob. Pr.,* 549, 560–1.

There is no moral consideration as to a surety.

Principal cannot bind surety by acts, &c. *Natl. Bank vs. Darragh,* 3 *Thomp. & Cooke,* 138 ; *Hunter vs. Robertson,* 30 *Ga.,* 479.

This point is definitely settled on a case exactly like this, by *Smith vs. Caldwell,* 15 *Rich., S. C. (Law,)* 365, which was a case at law.

Surprised by a suit on a note on which he was only a surety, ten years after signing it, the equities in this case are all with the appellant.

*D. H. Wiles,* for the appellee.

The signing of the note created a joint obligation as between the party signing and Gates, the payee in the note, equally binding on each of the obligors for the payment of the sum specified in the note. *Whitcombe vs. Whiting,* 2 *Dougl.,* 652, again announced in the case of *Wyatt vs. Hodson,* 8 *Bingh.,* 300.

The American Courts have almost uniformly supported the same doctrine. In the case of *Hunt, Ex. vs. Bridgman,* 2 *Pick.,* 581, the Court decided that "a partial payment made on a note by the principal promisor, will take the debt out of the Statute of Limitations as to the surety."

This point was subsequently affirmed by the same Court in *White vs. Hale,* 3 *Pick.,* 291. But the leading case in which all the most noted authorities were based upon, is *Sigourney vs. Dwirey, Jr.,* 14 *Pick.,* 387, which was also based on a promissory note against several defendants, and the Statute of Limitations pleaded. The Court again decided that "the payment of interest by the principal promisor in a joint and several promissory note, annually, from the time the note was given, is sufficient to take

the note out of the Statute of Limitations as against the sureties.''

The same principle has been announced as the law of Maryland.

In the case of *Ellicott vs. Nichols*, 7 *Gill*, 85, the Court reviewed the leading cases on the subject, and decided where one of the parties to a note makes a partial payment on the note before the Statute of Limitations applies, it renews the note against the other promisors, and the Court fully endorsed the rulings in the case of *Whitcomb vs. Whiting*.

'' There is no difference between accommodation notes, and those negotiated for value.'' '' The Court will look to the relation the parties bear to each other on the instrument itself, and determine their liabilities accordingly.'' *Clopper vs. Union Bank*, 7 *H. & J.*, 92; *Yates vs. Donaldson*, 5 *Md.*, 400 *and* 401.

The whole doctrine is fully reviewed in *Angell on Limitations*, commencing at sec. 248, and the notes thereto.

The third plea is a mere repetition of the second plea, being the Statute of Limitations, in a different form, provided the law would release from the payment of the note, upon the facts set forth in said plea; but admitting all the matters stated in said plea, as the demurrer does, still he would be liable, and hence the Court ruled correctly in sustaining the demurrer. The plea is put in on equitable grounds as stated. But there is no equity in it. It does not allege that time was given by the plaintiff to Middlekauff, without the consent of Schindel, and that he was in any manner injured or damnified by any act of the plaintiff. It merely asserts that he was surety, and that the Statute of Limitations applied, and that he never did anything, or in any manner authorized Middlekauff to do any act, or make any promises to remove the effect of the Statute of Limitations. In the case of *Sigourney vs. Duirey*, before cited, the Court say on page 398: ''Some reliance was

placed in the argument, upon the fact that the defendant, who pleads the present case, was a surety, and the consideration of hardship was strongly pressed upon the Court." "We have already remarked, that on a joint and several note *as to the promisee* all are principals."

"The case of *Hunt vs. Bridgham,* in Massachusetts, and most of the English cases cited, were those of sureties, and yet that circumstance was considered as making no difference upon the question of legal liability." "When a note is given with a surety, it indicates that the promisee wishes and means to have security; it indicates that it is intended for the accommodation of the principal; and with a view to such accommodation, it may reasonably be expected that it will continue beyond the particular time stipulated, and the law binds all parties till payment."

ROBINSON, J., delivered the opinion of the Court.

This case has been argued with commendable zeal and ability, but *Ellicott vs. Nichols,* 7 *Gill,* 86, is, we think, conclusive as to the question presented by the record.

Prior to Lord Tenderden's Act, and the Mercantile Law Amendment Act of 1856, it was settled in England, that part payment by one, of two or more joint and several makers of a note, was sufficient to prevent the bar of the Statute of Limitations, and this too without regard to whether such payment was made before or after the statute had attached. *Parkham vs. Raynal,* 2 *Bing.,* 306; *Wyatt vs. Hodson,* 8 *Bing.,* 309; *Rew vs. Pettit,* 1 *A. & E.,* 196; *Burleigh vs. Stott,* 8 *B. & C.,* 36; *Channell vs. Ditchburn,* 5 *M. & W.,* 594.

This doctrine is stated by Lord ELLENBOROUGH to have had its origin with the case of *Whitcomb vs. Whiting,* decided in the King's Bench in 1781, in which Lord MANSFIELD said, the payment by one is payment for all, the one acting virtually for the rest, and in the same manner an admission by one is an admission by all, and the law

raises the promise to pay when the debt is admitted to be due.

In this country the decisions are quite conflicting. In some States the English rule is fully recognized and adopted, whilst in others the Courts hold that no such authority can be fairly implied from the relation of joint debtors, and that a payment by one of several joint makers, cannot in any manner operate to bind the others.

It is unnecessary to review the many cases on the subject—they are collected and reviewed in the notes to *Whitcomb vs. Whiting, Smith's Leading Cases, vol.* 1, 642.

In *Ellicott vs. Nichols,* this Court recognized a distinction between a payment made by one of several joint makers, before the statute had attached, and one made subsequent thereto. In the former, the payment was held sufficient to take the note out of the operation of the statute, but not so if the note had become barred.

The case of *Channell vs. Ditchburn,* 5 *Meeson & Welsby,* 494, in which it was decided that a payment by one of the makers of a joint and several promissory note, even after the statute had attached, was sufficient to take the case out of the statute, was considered by the Court, and Judge MARTIN said that the error of Baron PARKE consisted in his not discriminating between a payment of interest before and after the statute had attached. In the former case a payment by one of the makers of a promissory note might be regarded as a payment by all, because at the time of the payment the parties were jointly liable for the debt, and one might therefore be considered as the agent of the other with respect to the debt.

The Court also fully recognized the decision of *Whitcomb vs. Whiting,* and said that the part payment of principal and the payment of interest relied on to take the case out of the bar, was made within the legal time and before the statute had attached.

The rule thus laid down in *Ellicott vs. Nichols,* has been the accepted law of this State for nearly thirty years, and

Schindel *vs.* Gates.

in the absence of legislation to the contrary, it is not to be questioned. It may not be amiss however to say, the same rule has received the sanction of the highest Courts in other States. *Sellman vs. Sellman,* 2 *Hill,* 416 ; *Steele vs. Jennings,* 1 *McMullan,* 297 ; *Gordy vs. Gilliam,* 6 *Richardson,* 28; *McIntyre vs. Oliver,* 2 *Hanks,* 209; *Walton vs. Robinson,* 6 *Iredell,* 341; *Emmons vs. Overton,* 18 *B. Monroe,* 643

In regard to the supposed hardship of the rule as against sureties to a note, the answer is, that it is always in their power to inquire whether it has been paid, and if it remains unpaid to compel the holder to proceed against the principal, or. to pay the note and proceed in their own name.

The demurrer to the defendant's third plea was therefore properly sustained. The note in this case was a joint and several note, and the fact that the defendant signed it as surety, in no manner affected the plaintiff's right to recover. As between the defendant and the principal, the relation of the former as surety, was of course material, because the latter, if compelled to pay the note, had his remedy over against the principal, or if the note was paid by the principal such relation would protect the surety from any claim for contribution.

In this case the payments of interest were made from year to year by the principal, and before the statute had attached, and such payments were sufficient, in our opinion, to prevent the bar of limitations.

There was no error therefore, in granting the plaintiff's prayer, and in refusing the prayers offered by the defendant.

*Judgment affirmed.*

(Decided 13th June, 1877.)