# CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed May 28, 1894.

THEODORE HOOPER AND JAMES E. HOOPER.

VS.

ALCAEUS HOOPER.

*Frank Gosnell* and *T. M. Lanahan* for plaintiffs.

*Hinkley & Morris* and *T. Foley Hisky* for defendant.

WICKES, J.—

The plaintiffs and defendant were co-partners, trading as William E. Hooper & Sons, and subsequently organized the Woodberry Manufacturing Company of Baltimore County. In April, 1889, a brother, William J. Hooper, being largely indebted to the company, the plaintiffs and defendant entered into the following contract of guaranty:

BALTIMORE, April —, 1889.

In consideration of the sum of five dollars, the receipt whereof is hereby acknowledged, we, Theodore Hooper, James E. Hooper and Alcaeus Hooper, jointly and severally agree to pay, on thirty days' notice, to the firm of William E. Hooper & Sons, and to the Woodberry Manufacturing Company of Baltimore County, the latter a body corporate of the State of Maryland, any sum that may now or may hereafter be due said firm and said corporation, not exceeding in the aggregate, to both, thirty-five thousand dollars for goods sold and money loaned to William J. Hooper, individually, or trading as William J. Hooper & Co., each of us reserving to himself the right to withdraw from this agreement by written notice to each of the other signers and to said firm and to said corporation, such notice, how-ever, not to cancel his obligation as to indebtedness existing when it is given. This agreement cancels any oral and any written obligation that any of us may have given hitherto to each other or to said firm or to said corporation as to indebtedness of William J. Hooper and William J. Hooper & Co., excepting as to a certain mort-gage note for twenty-five thousand dollars given by said William J. Hooper on property in North Carolina, which note is not to be considered as a part of the credit herein named.

(Signed) THEODORE HOOPER,
JAMES E. HOOPER,
ALCAEUS HOOPER,

In addition to the sums of money owing by the said William J. Hooper at the date of said guaranty, certain other sums of money were borrowed from time to time, the first item in the account of his indebtedness being under date of October, 1888, and the last under date of June, 1889.

The defendant was at that time and until July, 1891, the treasurer of the association.

On April 15, 1891, the defendant delivered to the Woodberry Manufacturing Company the following paper:

"BALTIMORE, April 15th, 1891.

"To The Woodberry Manufacturing Company of Baltimore County:

"Messrs. William E. Hooper & Sons, James E. Hooper, Theodore Hooper and William J. Hooper:

"You will each take notice that, in accordance with the reservation contained in the agreement of April, 1889, whereby I, together with Theodore Hooper and James E. Hooper, agreed that I would hold myself responsible for my share of certain indebtedness which might be due by William J. Hooper, individually, or trading as William J. Hooper & Co., to the Woodberry Manufacturing Company of Baltimore County or the firm of William E. Hooper & Sons, I decline to be responsible for any such indebtedness which shall be incurred on or after the date of this notice, and that I withdraw from said agreement.

"(Signed) ALCAEUS HOOPER."

William J. Hooper never having paid this indebtedness, the Company under date of March 26, 1894, served upon the plaintiffs and defendant the following notice in writing:

"BALTIMORE, March 26th, 1894.

"THEODORE HOOPER,

"JAMES E. HOOPER,

"ALCAEUS HOOPER,

"Gentlemen—You will please pay to the Woodberry Manufacturing Company the sum of thirty-five thousand dollars, with interest thereon, from the 15th day of April, 1891, said sum of thirty-five thousand dollars being the amount due by William J. Hooper and Company to the Woodberry Manufacturing Company for goods sold and delivered and money loaned to William J. Hooper, trading as William J. Hooper & Co., by the Woodberry Manufacturing Company, as of the 1st day of April, 1891, and the payment of which was guaranteed by you jointly and severally in a certain contract of guaranty signed by you in April, 1889.

"THEODORE HOOPER,

"President of the Woodberry

Manufacturing Company."

The corporation did also upon the same day serve upon William J. Hooper this notice:

"BALTIMORE, March 26, 1894.

"William J. Hooper and William J. Hooper, trading as William J. Hooper and Company:

"As the Woodberry Manufacturing Company desires to close up all outstanding accounts on its books, I beg leave to notify you that the company requires that you shall pay at once all moneys now past due and owing by you to the corporation and oblige,

Your obedient servant,

THEODORE HOOPER,

President of the Woodberry Mfg. Co.

Test: JAMES E. HOOPER, Treas."

On the same day William J. Hooper replied· that it would be impossible for him to pay his indebtedness "this year."

On March 27th, 1894, the plaintiffs addressed to the defendant the following notice:

BALTIMORE, March 27th, 1894.

ALCAEUS HOOPER, ESQ.,

Dear Sir—We have been called upon by the Woodberry Manufacturing Company to pay the indebtedness due that corporation by our brother, William J. Hooper, to the extent of our guarantee, and as he has expressed his inability to pay the same, and as we are jointly liable under our guarantee with you to pay that corporation thirty-five thousand dollars of his indebtedness, with interest thereon, we propose to meet our obligation on Monday next, April 2nd, and we now ask you to contribute your share toward the payment of the said obligation, and not compel us to pay it all, and look to you for contribution.

Yours respectfully,

(Signed) THEODORE HOOPER,

JAMES E. HOOPER."

To this communication the defendant paid no attention, and the plaintiffs notified him under date of April 2, 1894, as follows:

"BALTIMORE, April 2, 1894.

"ALCAEUS HOOPER, ESQ.,

"Dear Sir—We hereby notify you that we have this day paid to the Woodberry Manufacturing Company the sum of forty-one thousand two hundred and twenty-four dollars and seventeen cents ($41,224.17), being thirty-five thousand dollars ($35,000) due to said corporation by William J. Hooper, trading as William J. Hooper & Company, the payment of which was guaranteed by you and us to the Woodberry Manufacturing Company under agreement in writing signed in April, 1889, with interest on said sum from April 15, 1891, to this date. And we hereby demand from you the payment to us at once of one-third of said amount, your proportion thereof.

Yours respectfully,

(Signed) THEODORE HOOPER,

JAMES E. HOOPER."

To this demand, formulated in the bill of complaint, the ′ defendant has pleaded the Statute of Limitations.

It thus appears that the first item of the indebtedness of William J. Hooper to the Woodberry Manufacturing Company was contracted October, 1888, and the last item June 4, 1889. That the joint and several contract of guaranty was entered into April, 1889. That the defendant withdrew from it April 15, 1891. That the Woodberry Manufacturing Company notified William J. Hooper and his guarantors March 26, 1894, to pay the amount due at the time the defendant withdrew, to which notice William J. replied his inability to pay, and the plaintiff having requested the defendant to respond to the extent of his obligation, pro-

ceeded themselves, on April 2, 1894, to pay the entire amount due under the guarantee.

Whether the Statute of Limitations can be successfully relied upon under such circumstances, must of course, depend upon when it began to run. If, as the learned counsel for the defendant insist, it commenced at the date of each item in the account of William J. Hooper, or if not, then certainly from the date of the guaranty, it is apparent that the remedy of the plaintiffs is barred. And for this contention the case of Little, administrators, vs. Edwards, 69 Md. 499, is confidently relied upon.

In that case K and P owned a judgment in unequal portions, which they ordered entered to the use of E, "and I guarantee its payment."

The question was whether a payment of interest by R removed the bar of the statute as to K. The Court said that the statute began to run from the date of the guarantee; that the guarantee was several and not joint, and that the payment of interest by P would not prevent the running of the statute in favor of K, and further that the money paid was contributed by the defendant in the judgment, and was not the money of P at all.

But this case is different in every particular from the case under consideration. There the guarantee was of the particular interest which each had in a particular judgment, and not one word as to any future indebtedness, or as to any period as of which the indebtedness was to be ascertained. The Court could not very well have found a different date from which to estimate the running of the statute than the date of the guaranty. But here they "jointly and severally" agree to pay on thirty days' notice * * * any sum that may now *or may hereafter be due*, reserving the right to withdraw by written notice, *such notice, however, not to cancel his obligation as to indebtedness existing when it is given*. And the defendant himself so understood it, for in his formal notice of withdrawal, dated April 15, 1891, he said, *I decline to be responsible for any such indebtedness which shall be incurred on or after the date of this notice.*

I do not see how there could well be a clearer admission of his indebtedness as of that time, and that as we have seen was April 15, 1891.

A distinction must, of course, be taken between a limited and a continuing guarantee. In Douglass vs. Reynolds, 7 Peters, 113, some of the older cases referred to by Justice Story who delivered the opinion of the Court. For example, in Melville vs. Hayden, 3 Barn. and Ald., 593, the guarantee was, "I engage to guaranty the payment of A, to the extent of sixty pounds at quarterly account, &c." *Held*, not to be a continuing guarantee, as the words "quarterly account" imported only the first quarterly account. But in Mason vs. Pritchard, 12 East. 277; 2 Camp. 436, the words of the guarantee were, "to be responsible for any goods he hath or may supply my brother with to the amount of one hundred pounds." This the Court held a continuing guarantee to the extent of one hundred pounds until the credit was recalled. And in 11 Revised Reports, p. 369, it is held, that the words are to be taken *most strongly against the party giving the guarantee as the sense of them will admit of.* I do not therefore see how it is possible under the terms of the contract of guaranty between these parties, to hold that either the date of the items of indebtedness, or of the contract itself, are the proper periods from which to compute the running of the statute. Douglass and Reynolds, rules the point, that it could not be the date of the indebtedness, and the terms of the agreement clearly indicate the intention of the parties that future indebtedness to the time of withdrawal shall be covered by it, to the extent of the limit fixed.

Taking then the time when the statute commenced as April 15, 1891, how stands this case, and what was the effect of the payment by the plaintiffs to the company on April 2, 1894?

At the time this payment was made, three years had not elapsed, and the period was not complete until April 15, 1894. The bill, however, in this case was filed on May 29, 1894.

Under these circumstances, can the Statute of Limitations be successfully pleaded? The rule of law applicable to this state of facts, had its origin in Whitcomb vs. Whiting, decided in the King's Bench in 1781, and reported in 2 Dougl. 652. Lord Mansfield delivered the opinion of the Court in six lines

in which he said, in speaking of the effect upon the statute of the acknowledgment of one of several drawers of a joint and several promissory note, "payment by one is payment for all, the one acting as agent for the rest; and in the same manner, an admission by one is an admission by all; and the law raises the promise to pay, when the debt is admitted to be due." Now, whatever may be the law of this State upon the second proposition contained in the opinion, and I am quite sure it is not accepted in our cases as removing the bar of the statute when it has once run, I think there is no doubt as to the first.

In Ellicott vs. Nichols, 7 Gill, 86, the cases are reviewed, including Whitcomb vs. Whiting, and while the Court holds "that the acknowledgment of one partner of a subsisting partnership debt if made subsequent to the dissolution of the partnership, and after the Statute of Limitations has operated on the demand, is not evidence against his co-partners so as to deprive them of the benefit of the statutory bar," the Court nevertheless approves the language of Mr. Justice Bayley in Atkins vs. Tredgold, 2 Bar. & Cres. 23, in which he holds that "until the statute had barred the demand the promissors were subject to a joint and common responsibility; and under such circumstances it might well be maintained that a payment made by one of the parties to the note was a payment made for the benefit of all." Willes, J., therefore properly remarked "that the defendant had the benefit of the partial payment, and must therefore be bound by it."

In Schindel vs. Gates, 46 Md. 604, the present Chief Justice, delivering the opinion of the Court, states the rule to be as laid down in Ellicott vs. Nicholas, which is approved as the accepted law of this State "for nearly thirty years," and held in that case that the payment by the principal of the interest on a joint and several promissory note, will prevent the Statute of Limitations from attaching to the note in favor of the surety." In Martin vs. Frantz, Atlantic Rep., Vol. 18, p. 20, the Supreme Court of Pennsylvania reviews the doctrine and the cases, and holds as the sum and substance of the authorities, that "it is clear that whatever rights of contribution plaintiff in error may have, arise out of his payment of more than his due proportion of the joint obligation, and will date from such payment entirely unaffected by the fact that the Statute of Limitations has barred any direct liability of his co-surety to the creditor."

Nowhere is the rule and the reason of the rule more tersely and vigorously stated than by McIlvaine, J., in Camp. vs. Bostwick, 20 Ohio St. 347. It was held that the right to contribution does not arise from the original instrument of joint obligation, but from the equity of one who has borne more than his just share of a joint burden, and said the learned justice, "the equity having once arisen between co-sureties, neither the creditor, the principal, the Statute of Limitations, nor the death of a party can take it away.

The text books are also full and clear to the point. 1 Wood on Limitations, p. 394, Sec. 145; Baylies on Sureties and Guarantors, p. 455, Sec. 8; Angell on Limitations, p. 118, Sec. 131; De Golyar on Guaranties and Principal and Surety, p. 341 and 354. But it is supposed by the defendant's counsel that a distinction exists between a contract of guaranty, and cases of co-surety. But for the purposes of the question now under consideration, there can be no difference upon principle, and none whatever upon authority so far as I have been able to ascertain. They are simply in this case, co-promisors, two of whom have paid more than their just proportion of the debt, and whose right of action for contribution against the third accrued upon their payment of the money, until which time they had suffered no loss. I think, therefore, the conclusion is inevitable, that the payment of William J. Hooper's indebtedness to the Woodberry Manufacturing Company, to the extent of the sum limited in the contract of guaranty, by the plaintiffs, and before the Statute of Limitations has barred the claim, gives to them a right of action against their co-guarantor for his proportionate part, from the date of said payment, and that this right is not affected by the fact that the statute would, at the time the bill was filed, have operated to discharge him from liability to the Woodberry Company.

I am therefore of opinion that the plaintiffs are entitled to a decree for the relief prayed in their bill.

It was argued that payment was not made by the plaintiffs to the company in such manner as to entitle them to relief, supposing the bar of the statute not to apply. But I can see no force in the contention, and shall not prolong this opinion by referring to the testimony.

Nor shall I advert to the other grounds upon which the plaintiffs presented their right to recover, such as a new promise to pay in May last after the first bill was dismissed, for upon reason and authority, I am clear that in all equity and fairness they are entitled to a decree and that their right is not affected by the Statute of Limitations.