656 A.2d 321

Mary Ann YOCKEY

v.

Charles J. KAHL.

No. 79, Sept. Term, 1994.

Court of Appeals of Maryland.

April 6, 1995.

Reconsideration Denied May 8, 1995.

David J. McDonnell, Towson, for appellant.

Chester H. Hobbs, Michael Paul Smith (Bodie, Nagle, Dolina, Smith & Hobbs, P.A., all on brief), Towson, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

This case presents the question of whether a voluntary payment on a promissory note by a co-maker of the note who is no longer obligated on it as a result of a discharge in bankruptcy tolls the statute of limitations on the note as to the remaining obligor. We shall hold that it does not.

## I

From 1977 on, Frank Yockey was president of a succession of home building companies. The appellant, Mary Ann Yockey, is Mr. Yockey's mother. She at no time was a stockholder, director, officer or employee of any of her son's companies, but on occasion, of her own volition, she would visit the corporate offices and sometimes perform tasks such as going through the mail or cleaning. At various times over the years, Mrs. Yockey also loaned money to her son's companies.

Charles J. Kahl, the appellee, worked for a number of years as the plumbing subcontractor for Mr. Yockey's companies. Sometime around 1987, Mr. Kahl's receivables with respect to work performed on one of Mr. Yockey's projects began to develop some age. Mr. Yockey agreed to prepare a note in the amount of $28,963.00 to reflect that debt. Both Mr. Yockey and the appellant signed the note which contained the following language:

"September 3, 1987

We Franklin W. Yockey and Mary Ann Yockey agree to pay to Charles Kahl the sum of $28,963.00 however, if the buyer of the spec house signs a contract with Charles Kahl to complete the plumbing it will reduce the debt to $25,963.00. This debt will be paid upon settlement of property belong-

ing to Frank W. Yockey located at 13819 Cripplegate Road, Maryland 21131. The debt to be payable at 4125 Cliffvale Road Baltimore, Maryland 21236 without default value received with 10% interest per annum.

/s/ Dolores H. Harris [witness]

/s/ Frank W. Yockey

/s/ Mary Ann Yockey"

Under Chapter 7 of the Bankruptcy Code Mr. Yockey received a discharge of pre-petition debts pursuant to an order of the United States Bankruptcy Court dated July 12, 1989. The appellee was included in the schedule of creditors which accompanied Mr. Yockey's bankruptcy petition.

The note matured upon settlement on the sale of Mr. Yockey's Cripplegate Road residence. That settlement occurred on January 24, 1990.

Sometime in 1991, appellee was working on two jobs for Mr. Yockey. During this period, Mr. Kahl inquired as to when he would be paid on the note. According to his testimony, he was told that he would be paid eventually when some money came in.[1]

On July 6, 1992, Mr. Yockey gave appellee a personal check in the amount of $5,000.00. The check bore the reference "Payment on note Sept. 3, 1987."

On May 12, 1993, appellee sued appellant and Mr. Yockey for the amount due on the note. Judge Alfred L. Brennan, Sr., of the Circuit Court for Baltimore County, dismissed the case against Mr. Yockey on receipt of evidence that his debt to the appellee had been discharged in bankruptcy.

At the conclusion of the bench trial, Judge Brennan determined that the July 6, 1992 payment by Mr. Yockey revived the debt as to the appellant, thus avoiding the limitations bar. The court then ordered that a judgment be entered against

---

1. Mr. Kahl testified that on several occasions both the Yockeys made this statement to him. Mrs. Yockey testified that she did not recall making such statements. Mr. Yockey did not testify as to whether he or his mother made any such statements.

the appellant in the amount of $42,340.52.[2]  The appellant filed an appeal from that judgment to the Court of Special Appeals. Prior to review by the intermediate appellate court, we, on our own motion, issued a writ of certiorari.

The appellant argues that the bankruptcy discharge of the debt as to Mr. Yockey terminated the co-obligor relationship between him and his mother, and that, absent that relationship, Mr. Yockey had no authority to acknowledge the debt to Mr. Kahl on behalf of Mrs. Yockey.  The appellee argues that, in fact, the co-obligor relationship was not terminated by Mr. Yockey's discharge in bankruptcy, but that, even if it was, a co-*maker* relationship is sufficient to find authority in Mr. Yockey to acknowledge the debt on behalf of Mrs. Yockey.

## II

The appellee relies on a series of cases to support his contention that Mr. Yockey's payment to the appellee tolled the statute of limitations on the note as to the appellant: *Burgoon v. Bixler,* 55 Md. 384 (1881); *Schindel v. Gates,* 46 Md. 604 (1877); *Ellicott v. Nichols,* 7 Gill 85 (1848).  None of these cases, however, involved a partial payment by one no longer obligated on the underlying debt.  We hold that it is precisely this continuing, co-*obligor* relationship, not merely a co-*maker* status, that provides the basis for finding the authority in one co-maker to acknowledge a debt for another.

In *Ellicott,* the plaintiff had loaned the defendant partnership a sum of money on a note.  The partnership was subsequently dissolved.  After the applicable period of limitations had expired, one of the former partners allegedly acknowledged the debt, and the plaintiff sued on the amount, arguing that the acknowledgement had operated to remove the limitations bar.  In reversing the judgment of the trial court, we found that the acknowledgement, made after the limitations

---

**2.**  This amount included the unpaid balance of the note plus accrued interest.

period had expired, was ineffective in removing the bar of limitations because:

"[t]hose who formerly occupied the position of joint debtors, covered by a common obligation, no longer stand in that relation to the creditor, or to each other. There is no means of enforcing against them, the barred demand.

\* \* \* \* \* \*

"The power thus to implicate and bind the firm, is not to be considered as remaining in any one of the partners, after the expiration of the partnership."

*Ellicott,* 7 Gill at 102–03. We further remarked that:

"[u]ntil the statute had barred the demand, *the promisors were subjected to a joint and common responsibility;* and under such circumstances it might well be maintained, that a payment made by one of the parties to the note, was a payment made for the benefit of all."

*Id.* at 104 (citing with approval *Atkins v. Tredgold,* 2 Barn. & Cress. 23, 107 Eng. Rep. 291 (1823) (explaining *Whitcomb v. Whiting,* 2 Dougl. 652, 99 Eng.Rep. 413 (1781))) (emphasis added). We then concluded that:

"the decision in *Whitcomb vs. Whiting,* rested upon the fact, that at the period when the partial payment was made, the Statute of Limitations had not acted upon the demand, and that there was therefore, with respect to the debt, *a continuing joint liability. It is upon this hypothesis alone, that one of the joint debtors could be considered as virtually the agent of the others."*

*Id.* at 105 (emphasis added). We further reasoned that:

"a payment by one of the makers of a promissory note, might be regarded as a payment by all, *because at the time of the payment, the parties were jointly liable for the debt, and one might therefore be considered as the agent of the other,* with respect to the debt.

"The condition and relation of the parties is changed, as soon as the bar of the statute has become complete."

*Id.* at 106 (emphasis added); *see also Schindel,* 46 Md. at 615 (repeating our language in *Ellicott* ). Finally, we pointed out that, at least in Lord Tenterden's opinion:

> "the acknowledgement made by a partner, who was not himself liable at the time when he made it, was not sufficient to take the case out of the Statute of Limitations, so as to charge his co-partner."

*Ellicott,* 7 Gill at 106 (citing *Martin v. Bridges & Elmore,* 3 Car. & P. 83, 172 Eng.Rep. 334 (1828)).

In *Schindel,* the plaintiff sued on a note on which the principal debtor had paid interest annually for a number of years and had acknowledged the debt shortly before suit was filed. The defendant surety argued that the interest payments and acknowledgement by the principal debtor did not toll the limitations period as to him, because he was only a surety, was not even known to the plaintiff, and never personally acknowledged the debt nor ratified the interest payments. Relying on *Ellicott,* we found that the acknowledgement and interest payments, made before the limitations period had expired and, therefore, while both the principal debtor and the surety were still obligated on the note, operated to toll the limitations period as to both. In reaching this conclusion we recalled the reasoning of *Ellicott:*

> "In the [case of a payment made before the limitations statute has attached,] a payment by one of the makers of a promissory note might be regarded as a payment by all, *because at the time of the payment the parties were jointly liable for the debt, and one might therefore be considered as the agent of the other* with respect to the debt."

*Schindel,* 46 Md. at 615 (referring to *Ellicott,* 7 Gill at 106) (emphasis added).

*Burgoon* involved a suit on a note against one of two co-makers, the other having died prior to the suit. In this case, not only were both the defendant and the co-obligor liable on the note at the time the co-obligor made payments on and otherwise acknowledged the debt, but there was also sufficient evidence before the trial court to indicate that the defendant

himself had made such payments and acknowledgements that could serve as a bar to a limitations defense. *Burgoon,* 55 Md. at 389–90. Consideration, therefore, of the effect of the co-obligor's actions was not required. Nevertheless, citing *Ellicott* and *Schindel, supra,* we stated in dicta that:

> "it was ... the settled law of this State, that such payment [by a co-*maker*], if made before the Statute [of limitations] has attached, is sufficient to take the note out of the operation of the Statute as to all of the makers; on the principle that the payment by one is payment for all."

*Burgoon,* 55 Md. at 392 (emphasis added). Not only was this discussion unnecessary in the context of that case, but it is subject to an overly broad interpretation of the law that ignores the reasoning, provided in the cases cited, behind the general proposition that co-*obligors* have the authority to bind one another as to their joint obligation.

### III

In the case *sub judice,* unlike the cases discussed *supra,* there was no co-obligor relationship between the co-makers of the note at the time of the incident on which the creditor relies to remove the limitations bar. The debt, as to Mr. Yockey, had been discharged in bankruptcy prior to his $5000.00 payment to Mr. Kahl. That discharge effectively terminated the co-obligor relationship between Mr. Yockey and his mother.

The provision for discharges under Chapter 7 is found in 11 U.S.C. (the "Bankruptcy Code") § 727(b) (1988). This subsection provides, in pertinent part:

> "a discharge under subsection (a) of this section *discharges the debtor from all debts* that arose before the date of the order for relief under this chapter ..."

(emphasis added). Section 101(12) of the Bankruptcy Code defines "debt" as "liability on a claim." Under § 727(b), therefore, a Chapter 7 discharge discharges the debtor from all liability on claims that arose before the date of the order.

Moreover, the effect of a discharge in bankruptcy is described in § 524 of the Bankruptcy Code. Subsection (a) provides, in pertinent part:

"A discharge in a case under this title—

"(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 ... of this title, whether or not discharge of such debt is waived;

"(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ..."

This language has been interpreted fairly consistently, by courts around the country, to mean an extinguishment of the bankrupt's personal liability on the debt. *See, e.g., In re Lembke,* 93 B.R. 701, 702 (Bankr.D.N.D.1988) ("a discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability which, by virtue of section ... 524(a)(2) bars its enforcement against him"); *People v. Milne,* 690 P.2d 829, 837 (Colo.1984) ("The effect of a discharge in bankruptcy is to insulate a debtor from liability on any civil claim for payment arising out of the discharged debt."); *Ruth v. First Fed. Savs. & Loan Ass'n of LaPorte,* 492 N.E.2d 1105, 1109 (Ind.Ct.App.1986) ("A discharge in bankruptcy has the effect of releasing the bankrupt from any personal liability upon his debts." (citations omitted)); *Reichert v. Koch,* 202 Mont. 167, 171, 655 P.2d 993, 995 (1983) (personal liability is discharged); *Brown v. National City Bank,* 8 Ohio Misc.2d 40, 42–43, 457 N.E.2d 957, 960 (1983) ("The discharge of a debt in bankruptcy is more than a mere bar to remedy for the creditor. In point of fact the underlying claim is extinguished."); *see also In re Bagnato,* 80 B.R. 655, 658 (Bankr.S.D.N.Y.1987) ("[former creditor] was no longer creditor of the debtor upon entry of the order of discharge"); *In re Berry,* 85 B.R. 367, 369 (Bankr.W.D.Pa.1988) (construing former § 14(f) of the Bankruptcy Act: "the effect of a dis-

charge was simply to release a Bankrupt's personal liability for repayment of the debt"). *Contra, e.g., In re Horton,* 87 B.R. 650, 652 (Bankr.D.Colo.1987) ("the discharge under § 524 extinguishes the *debt,* not the *liability* " (emphasis in original)).

Under §§ 727(b) & 524(a) of the Bankruptcy Code, a co-debtor is not personally liable on a debt that has been discharged in a Chapter 7 bankruptcy. If a co-debtor is no longer liable on the debt, then it follows that he cannot be jointly liable on that debt with another. Without joint liability, there exists no co-obligor relationship. Without a co-obligor relationship there can be no authority for one co-maker to acknowledge the debt for another. Mr. Yockey's payment, therefore, did not toll the statute of limitations on the note as to the appellant.

## IV

The appellee also urges us to consider whether certain statements made by the appellant were sufficient to serve as an acknowledgment of the debt as to her, thereby tolling the statute of limitations. We find that this question has not been preserved for review.

Mr. Kahl did not make any allegation of acknowledgement by Mrs. Yockey in his complaint. At trial, Mr. Kahl testified regarding certain statements that the appellant had made which he understood as promises that the debt owed on the note would be paid sometime in the future. At the end of the plaintiff's case, defense counsel moved for judgment in favor of Mrs. Yockey. In response to that motion, counsel for Mr. Kahl argued that both Mr. Yockey's payment on the note and Mrs. Yockey's own acknowledgment of the debt served to toll the statute of limitations. Judge Brennan then denied the defendant's motion solely on the basis of the $5,000.00 payment by Mr. Yockey, making no reference to Mrs. Yockey's statements. The defense then rested without putting on any evidence. In his closing argument, Mr. Kahl's counsel made no further reference to Mrs. Yockey's statements. Judge

74

Brennan then entered judgment for Mr. Kahl, again making no reference to Mrs. Yockey's statements.

■ It is clear that the factual question of whether the appellant acknowledged the debt by her own statements was not decided by the trial court. That question, therefore, is not properly before us for review. *See* Maryland Rule 8–131(a). Furthermore, Mr. Kahl's testimony at trial and his counsel's response to the defense's motion for judgment were not sufficient to preserve the issue so that we could remand the case to the trial court to make such a factual finding.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. COSTS TO BE PAID BY APPELLEE.*